UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NICHOLAS OUDEKERK,

                              Plaintiff,

                                                          5:23-cv-00288
                                                          (BKS/TWD)
v.

GLENS FALLS POLICE OFFICER DOE 1;
GLENS FALLS POLICE OFFICER DOE 2; and
WARREN PROSECUTOR DOE,

                              Defendants.

_____

APPEARANCES:                                  OF COUNSEL:

NICHOLAS OUDEKERK
21-A-1295
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021
Plaintiff, pro se

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **ORDER AND REPORT-RECOMMENDATION**

The Clerk has sent to the Court a civil complaint filed by *pro se* plaintiff Nicholas

Oudekerk ("Plaintiff") pursuant to 42 U.S.C. § 1983.  (Dkt. No. 1.)  Plaintiff, who is currently

incarcerated at the Auburn Correctional Facility, has not paid the filing fee for this action and

seeks leave to proceed *in forma pauperis* ("IFP").  (Dkt. No. 2.)  He also requests the

appointment of counsel.  (Dkt. No. 5.)  For the reasons discussed below, the Court grants

Plaintiff's IFP application and recommends that Plaintiff's complaint be accepted in part for

filing.

## I.      IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a), and has filed the inmate authorization form required in this District, he is granted permission to proceed IFP. (Dkt. Nos. 2, 3.[2])

## II.     SUFFICIENCY OF THE COMPLAINT

Having found Plaintiff meets the financial criteria for commencing this action IFP, and because he seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.

### A.      Standard of Review

Sections 1915 and 1915A "provide an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007)

---

[1] The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov.  It does not appear Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

[2] Plaintiff should note that, although the Court has granted his application to proceed IFP, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

(citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  The Court shall dismiss a complaint in a civil action if the Court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1)-(2).

A claim is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Denton v. Hernandez*, 504 U.S. 25, 33 (1992) (holding that "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  This short and plain statement of the claim must be "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation."  *Id*.  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."  *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants. *See Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990). The court should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (citations omitted). While the Court will generally afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, leave to amend pleadings may be denied when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

**B.      Summary of the Complaint**

Plaintiff utilized the Court's form complaint for civil rights actions under Section 1983 and attached additional pages to elaborate upon his claims against defendants Glens Falls Police Officer Doe 1, Glens Falls Police Officer Doe 2, and Warren Prosecutor Doe[3] (together "Defendants"). (*See* Dkt. No. 1.) Defendants are sued individually and in their official capacities. *Id.* at 1. Plaintiff asserts allegations of wrongdoing related to his arrest on February 18, 2020. *Id.* at 4.

On February 18, 2020, Plaintiff was arrested at his home by Glens Falld Police Officers Doe 1 and Doe 2. *Id.* at 2. "This arrest was for crimes [Plaintiff] did not commit" including "obstruction of breathing [and] blood flow" and "false imprisonment" of another individual. *Id.*

---

[3] Plaintiff also refers to Warren Prosecutor Doe as the Assistant Prosecutor for Warren County Prosecutor's Office and the Warren County Prosecutor.

Plaintiff alleges the arrest was made in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments because (1) Plaintiff did not commit the crimes, and (2) the alleged victim told the police she did not call 911, no crime was committed against her, and she wanted the police to leave. *Id.* Further, the police did not have a warrant or consent to enter Plaintiff's home. *Id.* Plaintiff alleges the police were "deliberately indifferent" because there was "no ground[s] for an arrest." *Id.* Warren Prosecutor Doe also "motioned" the Court for an order of protection, which prevented Plaintiff from being around the alleged victim. *Id.* at 7.

In March of 2020, Plaintiff "was informed by the public defender that the charges/order of protection would be dismissed" stemming from the February 18, 2020, arrest. *Id.* However, the charges and order of protection were not dismissed until October of 2020. *Id.* at 8-9.

Through his first cause of action, Plaintiff alleges Glens Falls Police Officers Doe 1 and Doe 2 entered his home "without probable cause" and "arrested" him for "charges that were dismissed later" in violation of the Fourth Amendment. *Id.* at 10. In his second cause of action, Plaintiff claims Glens Falls Police Officers Doe 1 and Doe 2 "punished" him "with a false arrest" based on charges he did not commit in violation of the Eighth Amendment. *Id.* Through his third cause of action, Plaintiff alleges the Warren County Prosecutor violated his "due process" rights and his "rights to life, liberty, [and] property when they took 7 months to dismiss the charges [and] order of [protection]." *Id.* In his fourth cause of action, Plaintiff references the Eighth Amendment and claims the Warren County Prosecutor violated his rights against "cruel [and] unusual punishment" by "taking 7 months" to dismiss the charges and order of protection. *Id.* at 11. Plaintiff alleges the delay, allegedly due to Covid-19 related issues, "was a tactic used to punish" him for crimes he did not commit. *Id.*

Liberally construed, Plaintiff alleges (1) Glens Falls Police Officers Doe 1 and Doe 2 falsely arrested, falsely imprisoned, and maliciously prosecuted[4] him; and (2) Warren Prosecutor Doe denied Plaintiff due process and acted with deliberate indifference.[5]  Plaintiff seeks significant monetary damages.  *See id*. at 10-11.  For a complete statement of Plaintiff's claims, reference is made to the complaint.

## C.    Analysis

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990).

To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct: (1) was attributable to a person acting under color of state law; and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Whalen v. Cty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).  To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).  An official may not be held liable for constitutional violations simply

---

[4]  Because Plaintiff alleges he was arrested but never convicted, the Court construes the complaint as asserting a malicious prosecution claim under the Fourth Amendment.  *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) ("A § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure.").  Courts have consistently recognized that "the Eighth Amendment does not apply 'until after conviction and sentence.'"  *Wright v. New York City*, No. 09-cv-2452, 2012 WL 4057958, at *3 (E.D.N.Y. Sept. 14, 2012) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)); *see also Lindsey v. Butler*, 43 F. Supp. 3d 317, 325 (S.D.N.Y. 2014) ("the Eighth Amendment attaches only after conviction").  Plaintiff's allegations against the arresting police officers, therefore, do not implicate the Eighth Amendment.

[5]  Similarly, because Plaintiff claims the false charges were eventually dismissed, Plaintiff's allegations against the prosecutor do not implicate the Eighth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 n. 10 (1989).

because he held a high position of authority.  *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016).

"Section 1983 claims against municipal employees sued in their official capacity are treated as

claims against the municipality itself."  *Ortiz v. Wagstaff*, 523 F. Supp. 3d 347, 361 (W.D.N.Y.

2021).  A municipality cannot be held liable under Section 1983 unless the challenged action was

undertaken pursuant to a municipal policy, custom, or practice.  *See Monell v. Dep't of Soc.*

*Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

### 1.      Defendant Warren Prosecutor Doe

The Court liberally construes Plaintiff's complaint as alleging due process and deliberate

indifference claims against Warren Prosecutor Doe.  Prosecutors enjoy "absolute immunity from

§ 1983 liability for those prosecutorial activities intimately associated with the judicial phase of

the criminal process."  *Barr v. Abrams*, 810 F.2d 358, 361 (2d Cir. 1987).  The immunity covers

"virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an

advocate."  *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995).  This includes such

functions as "deciding whether to bring charges and presenting a case to a grand jury or a court,

along with the tasks generally considered adjunct to those functions, such as witness preparation,

witness selection, and issuing subpoenas," *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir.

2013), and whether and when to drop charges.  *Taylor v. Kavanagh*, 640 F.2d 450, 452 (2d Cir.

1981).  "This immunity attaches to conduct in court, as well as conduct 'preliminary to the

initiation of a prosecution and actions apart from the courtroom.'"  *Giraldo v. Kessler*, 694 F.3d

161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)).

"[O]nce a court determines that challenged conduct involves a function covered by

absolute immunity, the actor is shielded from liability for damages regardless of the

wrongfulness of his motive or the degree of injury caused."  *Bernard v. Cty. of Suffolk*, 356 F.3d

495, 503 (2d Cir. 2004) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).  Absolute immunity extends even to a prosecutor who "conspir[es] to present false evidence at a criminal trial.  The fact that such a conspiracy is certainly not something that is properly within the role of a prosecutor is immaterial, because the immunity attaches to his function, not to the manner in which he performed it."  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (cleaned up).  Immunity even extends to "the falsification of evidence and the coercion of witnesses," *Taylor*, 640 F.2d at 452, "the knowing use of perjured testimony," "the deliberate withholding of exculpatory information," *Imbler*, 424 U.S. at 431 n.34, the "making [of] false or defamatory statements in judicial proceedings," *Burns v. Reed*, 500 U.S. 478, 490 (1991), and "conspiring to present false evidence at a criminal trial," *Dory*, 25 F.3d at 83.

Here, the only conduct Plaintiff alleges against Warren Prosecutor Doe is in connection with her prosecution of Plaintiff.  Her decision to continue to prosecute him, notwithstanding his claims of innocence or any other misconduct related to the prosecution, does not deprive Warren Prosecutor Doe of absolute prosecutorial immunity.  As stated above, the decision whether to prosecute regardless of the motivation for that decision, along with the decision whether and when to drop charges are protected by absolute immunity.  Thus, Warren Prosecutor Doe is immune from suit and liability based on absolute prosecutorial immunity.

Moreover, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county.'"  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988), *cert. denied*, 488 U.S. 1014 (1989)); *see also Rich v. New York*, No. 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2021) ("[A]ny claims Plaintiff may raise against the [District Attorney] Defendants in their 'official capacity' would be precluded by immunity under

the Eleventh Amendment."); *Gentry v. New York*, No. 21-CV-0319, 2021 WL 3037709

(GTS/ML), at \*6 (N.D.N.Y. June 14, 2021) (recommending dismissal of the plaintiff's claims

against the defendant assistant district attorneys in their official capacities—which were

effectively claims against the State of New York—as barred by the Eleventh Amendment),

*report-recommendation adopted*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021).

For these reasons, the Court recommends dismissing Plaintiff's claims against Warren

Prosecutor Doe with prejudice pursuant to 28 U.S.C. §§ 1915(e)(i)-(iii) and 1915A(b)(1)-(2).

*See Collazo v. Pagano*, 656 F. 3d 131, 134 (2d Cir. 2011) (holding that claim against prosecutor

is frivolous if it arises from conduct that is "intimately associated with the judicial phase of the

criminal process").

### 2.    Defendants Glens Falls Police Officers Doe 1 and Doe 2

The Court liberally construes Plaintiff's complaint as alleging false arrest, false

imprisonment, and malicious prosecution claims against the officers.  "A Section 1983 claim for

false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be

free from unreasonable seizures, including arrest without probable cause." *Cea v. Ulster Cty.*,

309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (quoting (quoting *Sulkowska v. City of N.Y.*, 129 F.

Supp. 2d 274, 287 (S.D.N.Y. 2001)).  Such claims are one and the same because "[f]alse arrest

and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S.

384, 388 (2007).

The elements of a claim for false arrest under § 1983 are the same elements as a claim for

false arrest under New York law. *Lewis v. City of New York*, 18 F. Supp. 3d 229, 235 (E.D.N.Y.

2014) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "Under New York law, the

elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to

confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)). "For purposes of the privilege element of a false arrest and imprisonment claim, an act of confinement is privileged if it stems from a lawful arrest supported by probable cause." *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (N.Y. 2016); *accord Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest.") (citation and internal quotation marks omitted).

"To prevail on a Section 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment . . . and must establish the elements of a malicious prosecution claim under state law.'" *Butler v. Hesch*, 286 F. Supp. 3d 337, 355 (N.D.N.Y. Feb. 15, 2018) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted)). "The elements of a malicious prosecution claim under § 1983 are substantially the same as the elements under New York law." *Kelly v. Guzy*, No. 8:20-cv-721 (GTS/CFH), 2021 WL 5232749, at *4 (N.D.N.Y. Nov. 10, 2021), *report-recommendation adopted*, 2022 WL 160305 (N.D.N.Y. Jan. 18, 2022).

To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. *Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). "Under New York law, police officers 'initiate' prosecution by filing charges or other accusatory instruments." *Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir. 2010). A police officer may also be liable for malicious prosecution when he provides false information. *Watkins v. Town of Webster*, 592 F. Supp. 3d 96, 113 (W.D.N.Y. 2022).

Out of an abundance of caution, and mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *Sealed Plaintiff*, 537 F.3d at 191, the Court recommends that Plaintiff's Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims against defendants Glens Falls Police Officers Doe 1 and Doe 2 in their individual capacities survive initial review and require a response.[6] The Court expresses no opinion concerning whether these claims can survive a properly filed motion to dismiss or motion for summary judgment, or whether he may prevail at trial.[7]

However, insofar as the complaint asserts claims against defendants Glens Falls Police Officers Doe 1 and Doe 2 in their official capacities, the Court recommends that such claims be dismissed as Plaintiff has alleged no facts suggesting the existence of a municipal policy, custom, or practice. *See City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (requiring

---

[6] If Plaintiff wishes to pursue his claims against either of the unknown Glens Falls Police Officers, he must take reasonable steps to ascertain through discovery the identity of that individual. Upon learning the identity of an unnamed defendant, Plaintiff must amend the operative complaint to properly name that person as a party. If plaintiff fails to ascertain the identity of the Doe defendant so as to permit timely service of process, all claims against that individual will be dismissed. Rule 4 of the Federal Rules of Civil Procedure require that a party be served within 90 days of issuance of the summons, absent a court order extending that period. Fed. R. Civ. P. 4(m). The Local Rules shorten the time for service from 90 days under Rule 4(m) to 60 days. L.R. 4.1(b).

[7] Because the failure to file an action within the limitations period is an affirmative defense, a plaintiff is generally not required to plead that the action is timely filed. *See Abbas*, 480 F.3d at 640. *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Although the complaint was received for filing on March 3, 2023, it is dated December 27, 2022. (Dkt. No. 1.) Following the prison mailbox rule and applying the presumption that Plaintiff delivered the complaint to a prison official on the date it was signed, Plaintiff filed his complaint in this action for statute of limitations purposes on December 27, 2022. *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (a *pro se* litigant's papers are deemed to have been filed when they are placed in the hands of a prison official for mailing); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001) (where it is unclear when the complaint was given to prison officials, absent evidence to the contrary, the court assumes the complaint was given to prison officials the date it was signed). Accordingly, the Court assumes, for purposes of this Report-Recommendation only, that Plaintiff's Section 1983 claims are timely.

allegations of "a direct causal link between a municipal policy or custom, and the alleged constitutional deprivation" in a claim against a municipal employee in his official capacity).

### D. Service of Process

The Court notes that if the above recommendations are adopted, only Glens Falls Police Officers Doe 1 and Doe 2 remain as defendants.  The U.S. Marshals, however, cannot effect service on a "Doe" defendant.  The Second Circuit has instructed that district courts should assist incarcerated *pro se* plaintiffs in identifying Doe defendants.  *See Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (explaining that a "district court may pursue any course that it deems appropriate to a further inquiry into the identity" of a Doe defendant in assisting a *pro se* plaintiff).  In this case, Plaintiff has identified the date and location of the alleged incident.

Accordingly, in deference to Plaintiff's status as an incarcerated, *pro se* litigant, and mindful of the Court's obligation to assist such litigants in identifying unknown defendants, the Court recommends that City of Glens Falls Chief of Police, Jarred M. Smith, be named as a defendant in the action solely so that service may proceed and issue may be joined.  Once issued is joined, Plaintiff must seek, through discovery, the identity of the Doe defendants.  *See, e.g.*, *Paralta v. Doe*, No. 04-CV-6559, 2005 WL 357358, at *2 (W.D.N.Y. Jan. 24, 2005) (permitting the addition of the superintendent to facilitate service and discovery to uncover the identities of the unknown defendants).  By recommending this measure, the Court does not suggest in any way that the City of Glens Falls Chief of Police was personally involved in the constitutional deprivations alleged in Plaintiff's complaint or is otherwise subject to liability for the acts giving rise to Plaintiff's claims.

### III.    APPOINTMENT OF COUNSEL

Plaintiff requests the appointment of counsel.  (Dkt. No. 5.)  Plaintiff states that as of

May 25, 2023, he will no longer be incarcerated and will be without a residence, income, and

access to a law library.  *Id*. at 1.  He is disabled and uneducated.  *Id*. at 2.

There is no right to appointment of counsel in civil matters.  *Burgos v. Hopkins*, 14 F.3d

787, 789 (2d Cir. 1994).  Title 28 of United States Code Section 1915 specifically provides that a

court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. §

1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious

commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.

*Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit

reiterated the factors that a court must consider in ruling upon such a motion.  In deciding

whether to appoint counsel, the court should first determine whether the indigent's position

seems likely to be of substance.  If the claim meets this threshold requirement, the court should

then consider a number of other factors in making its determination.  *Id*. at 1341 (quoting *Hodge*

*v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)).  However, prior to evaluating a request for an

appointment of counsel, the plaintiff must make a threshold showing that he is unable to obtain

counsel through the private sector or public interest firms.  *See Cooper*, 877 F.2d at 173-74.

Here, Plaintiff has not set forth any information detailing his attempts to find an attorney.

(*See* Dkt. No. 5.)  Moreover, before counsel is assigned, it must be determined whether

Plaintiff's claims are likely to be of substance.  *See Terminate Control Corp.*, 28 F.3d at 1341.

This action was only recently commenced.  Because it is too early in the proceedings for the

Court to assess the merits of the action, Plaintiff's motion for counsel (Dkt. No. 5) is denied without prejudice and with leave to renew.[8]

## IV.    SWORN STATEMENT OF FACTS

The Court has reviewed the "Sworn Statement of Facts" filed December 8, 2023.  (Dkt. No. 6.)  The Court does not construe this document as amending the complaint.  To the extent Plaintiff raises new issues and/or complaints about Auburn Correctional Facility, these new complaints are not part of the present action.  Plaintiff should address any new complaints through the facility's grievance or other complaint process.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's application to proceed IFP (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that the Clerk provide the superintendent of the facility designated by Plaintiff as his current location with a copy of Plaintiff's Inmate Authorization (Dkt. No. 3), and notify the official that this action has been filed and that Plaintiff is required to pay to the Northern District of New York the statutory filing fee of $350, over time, pursuant to 28 U.S.C. § 1915; and it is further

**RECOMMENDED** that the Clerk provide a copy of Plaintiff's Inmate Authorization (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further

**RECOMMENDED** that the complaint (Dkt. No. 1) be accepted for filing in part; and it is further

---

[8] Any future motion for counsel must be accompanied by evidence of the efforts that Plaintiff has taken to retain counsel on his own, either in the public or private sector.

**RECOMMENDED** that Plaintiff's claims against Warren Prosecutor Doe be **DISMISSED WITH PREJUDICE** and that Warren Prosecutor Doe be **TERMINATED** as a defendant; and it is further

**RECOMMENDED** that Plaintiff's Fourth Amendment false arrest/false imprisonment and malicious prosecution claims against Glens Falls Police Officers Doe 1 and Doe 2, in their individual capacities, survive initial review and require a response; and it further

**RECOMMENDED** that Plaintiff's Fourth Amendment false arrest/false imprisonment and malicious prosecution claims against Glens Falls Police Officers Doe 1 and Doe 2, in their official capacities, be **DISMISSED**; and it is further

**RECOMMENDED** the Clerk **ADD** the City of Glens Falls Chief of Police, Jarred M. Smith, as a defendant **FOR PURPOSES OF SERVICE AND DISCOVERY ONLY**; and it is further

**RECOMMENDED** that the Clerk be directed to issue a summons and forward it, along with a copy of the complaint to the United States Marshal for service upon City of Glens Falls Chief of Police, Jarred M. Smith, as set forth herein; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 5) is **DENIED WITHOUT PREJUDICE WITH LEAVE TO RENEW**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

**IT IS SO ORDERED.**

Dated: May 5, 2023
       Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[9]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.

*REPORT AND RECOMMENDATION*[1]

[1]
    At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,

I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.

II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request."[2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."

[2]
    Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious

physical injury. *See Ortiz v. McBride,* 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); *Nicholas v. Tucker,* 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson[3] v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at \*1–\*2.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had been dismissed on the merits. 2008 WL 3836387 at \*1, \*7.

  - In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at \*1–\*2.

  - Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United

States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

[4]

Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's

history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

[5]

Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4. Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therfore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and

responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57– 59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237– 38 (2d Cir.1983).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 5185047

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 992885
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Benjamin Samuel RICH, formerly
known as Samuel Guillaume, Plaintiff,
v.
State of NEW YORK, New York City; New
York City Police Department; New York County;
New York County District Attorney's Office;
Detective Michael Miller, Vincent Corrando, John
Passementi, Cyrus Vance, Jr., Shipla Kalra, David
Nasar, and Does 1–100, Inclusive., Defendants.

21 Civ. 3835 (AT)
|
Signed 03/31/2022

**Attorneys and Law Firms**

Benjamin Samuel Rich, Staten Island, NY, Pro Se.

Gee Won Cha, Julinda A. Dawkins, New York State Office
of the Attorney General, New York, NY, for Defendant State
of New York.

Andrew B. Spears, New York City Law Department, New
York, NY, for Defendants City New York, Michael Miller,
Vincent Corrando, John Passementi.

Patricia Jean Bailey, New York County District Attorney's
Office, New York, NY, for Defendants Cyrus Vance, Jr.,
David Nasar.

**ORDER**

ANALISA TORRES, District Judge:

 **\*1** This action arises from a 2016 arrest and prosecution
of Plaintiff *pro se*, Benjamin Samuel Rich, in New York
County. He brings claims against the State of New York (the
"State"); former New York County District Attorney ("DA")
Cyrus R. Vance, Jr. and two Assistant District Attorneys
("ADAs"), Shilpa Kalra and David Nasar, (collectively, the
"DA Defendants"); and the City of New York (the "City"),
the New York City Police Department (the "NYPD"), and
NYPD officers Michael Miller, Vincent Corrando, and John
Passementi (collectively, the "City Defendants"), pursuant to,

*inter alia*, 42 U.S.C. §§ 1983, 1985, and 1986, the New York
State Constitution, and New York common law. *See generally*
Compl., ECF No. 1. Before the Court are three motions to
dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and
12(b)(6) of the Federal Rules of Civil Procedure, brought by
the State, ECF No. 20, the DA Defendants, ECF No. 22, and
the City Defendants, ECF No. 32.

For the reasons stated below, the State's motion to
dismiss is GRANTED, and Plaintiff's claims against the
State are DISMISSED. The DA Defendants' motion to
dismiss is GRANTED—Plaintiff's claims against Vance
are DISMISSED; and his claims against Kalra and Nasar
are DISMISSED except for Counts 3 and 4, which are
DISMISSED without prejudice to renewal in an amended
complaint. The City Defendants' motion to dismiss is
DENIED as to Count 4, and GRANTED in all other respects.
Plaintiff's claims against Passementi, the NYPD, and the City
are DISMISSED; and his claims against Miller and Corrando
are DISMISSED, except for Count 3, which is DISMISSED
without prejudice to renewal in an amended complaint.

**BACKGROUND** [1]

[1]     Unless otherwise stated, the following facts are
taken from the complaint and assumed, for
purposes of this motion, to be true. *ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.
2007).

On January 6, 2016, Plaintiff was at the Highline Ballroom
("the Highline"), a nightclub in Manhattan, as an invited
guest of Wasief Quahtan, a Highline employee. Compl. ¶ 24.
Quahtan and the club owner began arguing over "Quahtan['s]
[having brought] Plaintiff to the party." *Id.* ¶ 25. Security
staff, and an individual named Avery Jackson, asked Plaintiff
to leave. *Id.* ¶ 26. Plaintiff alleges that he was "forcibly
escorted" from the club, and that Jackson became "belligerent
and aggressive" towards him. *Id.* ¶ 27. Shortly thereafter, a
shooting occurred outside the Highline. *Id.* ¶ 28.

Plaintiff believes that Jackson "ran down the street and
jumped into a black sedan ... at the time the shots were fired."
*Id.* ¶ 37. He also states that there were "numerous witnesses"
to the shooting, including a "female 911 caller," who lived
"next door" to the Highline. *Id.* ¶ 36. In that 911 call, the
witness said that she had seen a "man jump into a black sedan
speeding down the street" after shots were fired. *Id.* Based

on this call, Plaintiff believes "it was more likely that it was [ ] Jackson who fired the shots before jumping into the black sedan to chase Plaintiff down." *Id.* ¶ 37.

**\*2** The shooting was investigated by Detective Michael Miller, who interviewed Jackson. *Id.* ¶¶ 29–30. Jackson told Miller that he saw Plaintiff go to a car, "pull out a gun, and shoot in the direction of the Highline," and that Jackson "ran back into the club" when shots were fired. *Id.* ¶¶ 30, 37. But, Plaintiff alleges that many of Jackson's representations to Miller contradicted his initial statements to the NYPD officers who first responded to the shooting, as well as other eyewitness accounts. *See, e.g.,* ¶¶ 30–32. For instance, Plaintiff alleges that Jackson told the responding officers that Plaintiff was "escorted from the club because he was intoxicated," and that Plaintiff then "went to his car, [a Rolls Royce] removed a firearm ... and fired several shots." *Id.* ¶¶ 31, 46. But, Jackson told Miller that Plaintiff was "forcibly ejected from the club" after an altercation with its manager, that Plaintiff was "belligerent," and threatened that he had a gun. *Id.* ¶ 32. Plaintiff also contends that Jackson's statements were demonstrably false, because surveillance videos showed that Jackson "was the aggressor towards Plaintiff," and that Plaintiff was "calm, peaceful, and cooperative" when escorted from the club. *Id.* ¶¶ 32, 41.

Plaintiff alleges that Miller failed to conduct a thorough and complete investigation of the shooting, because he did not interview several witnesses, including the 911 caller. *Id.* ¶¶ 36–37, 39. Plaintiff also suggests that Miller obtained— but disregarded—surveillance video from the inside and the outside of the club that would have corroborated Plaintiff's version of events. *See id.* ¶¶ 40–43. Plaintiff also complains that Officer Vincent Corrando, Miller's supervisor, "approved all [of the] reports written" in the investigation and "should have notice[d] or known of all the inconsistencies and contradictory statements" in Miller's reports. *Id.* ¶ 95. And, Plaintiff alleges that Officer John Passementi "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." *Id.* ¶ 96.

On January 9, 2016, Miller obtained a search warrant for Plaintiff's car, based on what Plaintiff contends were "false, misleading and/or embellished information" in the underlying affidavits. *Id.* ¶ 46. The next day, Jackson picked Plaintiff's mugshot out of a photo lineup. *Id.* ¶ 92. Plaintiff appears to argue that this lineup was unduly suggestive, because his "mugshot had a lighter background than the other photographs." *Id.* ¶ 92. The same day, Miller obtained a

warrant for Plaintiff's arrest for attempted murder, assault, and weapons possession, and in February obtained additional search warrants for Plaintiff's cell phone and laptop, allegedly based, again, on false and misleading statements provided by Miller and Jackson. *Id.* ¶¶ 45, 47. According to Plaintiff, no "physical evidence [ ] tie[d] him to any part of the shooting," *id.* ¶ 81, and the police did not recover a gun or find gunshot residue in Plaintiff's car, *id.* ¶ 91.

On January 22, 2016, a grand jury indicted Plaintiff for second-degree attempted murder, first-degree assault, and two counts of criminal possession of a weapon. *See id.* ¶¶ 45, 51. On January 27, 2016, Plaintiff was arrested. *Id.* ¶ 51. He was incarcerated until February 18, 2016, when he was released on bail. *Id.* ¶ 52.

In November 2016, Plaintiff was taken back into custody on suspicion of witness tampering, after Jackson allegedly made a "false[ ]" report to the DA's Office that Plaintiff had tried to contact him. *Id.* ¶¶ 53, 103. Plaintiff remained in jail until his trial, which began in June 2017. *Id.* ¶¶ 54, 64; *see also* Trial Tr. at 1, ECF No. 22-3. [2]

> [2]  The relevant state court trial transcripts were submitted by the DA Defendants in their motion to dismiss. *See* Trial Tr.; Dismissal Tr., ECF No. 22-4. The Court may take judicial notice of these transcripts as a matter of public record. *See Shmueli v. City of N.Y.,* 424 F.3d 231, 233 (2d Cir. 2005).

On March 26, 2016, ADAs Shilpa Kalra and David Nasar provided surveillance videos from the Highline to Plaintiff's counsel. Compl. ¶ 64. Plaintiff alleges, however, that the relevant video showed only "one (1) camera angle [out] of 14 camera angles." *Id.* He alleges that prosecutors did not provide videos from the thirteen additional camera angles until a week after trial commenced, even though these videos were collected from the Highline eighteen months earlier. Compl. ¶ 64. The trial court accordingly granted counsel's request to review the additional videos before conducting Jackson's cross-examination. Trial Tr. at 3. On direct examination, Jackson testified that he did not participate in escorting Plaintiff out of the club. *Id.* at 47–48.

**\*3** On June 12, 2017, prior to Jackson's cross-examination, Plaintiff's counsel reported to the trial court that Jackson could be identified in the additional videos based on his clothing. *Id.* at 135. Nasar acknowledged that if Jackson was indeed visible in the videos, he was "doing a bunch of things contrary to

what he testified about." *Id.*; *see also id.* at 136. The trial court then determined that Jackson should be questioned, under oath, outside the jury's presence, about his clothing on the night in question, and whether he could identify himself on the videos, among other matters. *See id.* at 146–50, 152–54. Jackson was brought in, and warned about perjury. *See id.* at 154–56. Jackson identified himself on the videos wearing a jacket and a light-colored shirt. *See id.* at 156–59. The court then adjourned the proceedings. *See id.* at 159. When the court resumed, Jackson, through counsel, invoked his Fifth Amendment right against self-incrimination, *id.* at 176, and the court declared a mistrial, *id.* at 186–88.

Plaintiff's counsel then moved to dismiss the indictment against Plaintiff on two grounds: first, that it was based on false testimony, and second, because of prosecutorial misconduct. Compl. ¶ 100. On October 17, 2017, Kalra consented to dismissal of the indictment on the first ground, but opposed the assertion of prosecutorial misconduct. Dismissal Tr. at 12–13, 15–16. The court dismissed the indictment, but the presiding judge stated he did not "see any prosecutorial misconduct." *Id.* at 16.

On March 12, 2021, over three years after the indictment was dismissed, Plaintiff commenced this action. Compl. Defendants move separately to dismiss the claims against them. ECF Nos. 20, 22, 32. The Court considers each motion in turn.

## DISCUSSION

### I. Legal Standard

#### A. Rule 12(b)(1)

An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction—that is, the statutory or constitutional power—to adjudicate it. *See* Fed. R. Civ. P. 12(b)(1); *Thomas v. Metro. Corr. Ctr.*, No. 09 Civ. 1769, 2010 WL 2507041, at *1 (S.D.N.Y. June 21, 2010). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A district court must consider a challenge to subject matter jurisdiction before addressing other grounds for dismissal. *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

On a Rule 12(b)(1) motion, the Court must accept all material factual allegations as true. *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). It may not, however, "draw inferences ... favorable to [the] plaintiff[ ]" on such a motion. *Id.* And, the Court may consider evidence outside the pleadings to resolve disputed factual issues relating to jurisdiction. *See id.*

#### B. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc.*, 493 F.3d at 98. On a Rule 12(b)(6) motion, the court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Additionally, because Plaintiff proceeds *pro se*, the Court is obligated to construe his submissions "liberally and interpret[ ] [them] to raise the strongest arguments they suggest." *Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (citation omitted). And, on a motion to dismiss, the Court may appropriately consider a *pro se* plaintiff's opposition papers to "supplement or clarify" the allegations in their complaint. *Sommersett v. City of N.Y.*, No. 09 Civ. 5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) (citation omitted).

### II. Duplicative and Improper Claims

**\*4** Count 7 of the complaint asserts a claim under 18 U.S.C. § 245 for the deprivation of rights under the color of law. Compl. ¶¶ 148–51. But, no private right of action exists under this federal criminal statute, and accordingly, Plaintiff cannot raise a cognizable claim under it. *See Corrado v. State of N.Y. Univ. Stony Brook Police*, No. 15 Civ. 7443, 2016 WL 4179946, at *3 (E.D.N.Y. Aug. 5, 2016). Count 7 is, accordingly, DISMISSED with prejudice.

Further, the Court finds that Count 9 of the complaint— fraudulent misrepresentation under § 1983, Compl. ¶¶ 157–

Case 5:23-cv-00288-BKS-TWD   Document 10   Filed 05/05/23   Page 24 of 57

63—is duplicative of Count 4—deprivation of a fair trial under § 1983, *id.* ¶¶ 133–37—because both seek redress for violations of Plaintiff's liberty interests arising from the alleged "fabrication of evidence by a government officer." *See Zahrey v. Coffey*, 221 F.3d 342, 349–50 (2d Cir. 2000). Count 9 is, accordingly, DISMISSED with prejudice.

Finally, three of Plaintiff's claims—Counts 4, 5, and 6—include both federal constitutional claims and analogous state constitutional claims. Compl. ¶¶ 133–47. The New York State Constitution "provides a private right of action where remedies are otherwise unavailable at common law or under § 1983." *Allen v. Antal*, 665 F. App'x 9, 13 (2d Cir. 2016). But, where alternative remedies are available under the federal civil rights statutes, including § 1983, courts must dismiss the plaintiff's state constitutional claims. *Id.* Because § 1983 provides a remedy for all of Plaintiff's alleged federal constitutional violations, any analogous state constitutional claims are duplicative. Accordingly, the state constitutional claims pleaded in Counts 4, 5, and 6 are DISMISSED with prejudice.

III. The State's Motion

The State moves to dismiss the complaint under Rule 12(b)(1), on the ground that the Eleventh Amendment bars Plaintiff's claims against it by virtue of sovereign immunity. State Mem. at 3, ECF No. 21. The Court agrees.

The Eleventh Amendment bars federal courts from exercising jurisdiction over claims against states. U.S. CONST. AMEND. XI. This extends to a state sued by its own citizens, *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72–73 (2000), and state agencies, *see Welch v. Texas Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 480 (1987). There are only limited exceptions to this rule, none of which are applicable here.

First, a state may waive its Eleventh Amendment defense. *See Coll. Sav. Bank v. Fla. Prepaid Postsec. Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). Here, the State has not explicitly waived its immunity, or consented to be sued. *See* State Mem. at 3. And, by filing a motion to dismiss, rather than an answer to the complaint, the State cannot be said to have taken actions inconsistent with an assertion of immunity. *Cf. Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 619 (2002) (finding waiver of immunity where state removed action to federal court, then asserted immunity).

Second, Congress may abrogate the states' immunity from suit through statute. *Kimel*, 528 U.S. at 80. But, Congress has not done so for claims brought under § 1983, *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), § 1985, *see Robinson v. Allstate Ins. Co.*, 508 F. App'x 7, 9 (2d Cir. 2013), or § 1986, *Medina v. Cuomo*, No. 15 Civ. 1283, 2015 WL 13744627, at *6–7 (N.D.N.Y. Nov. 9, 2015). In the "absence of [the State's] consent," accordingly, such claims are "proscribed by the Eleventh Amendment." *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

**\*5** Finally, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks prospective injunctive relief." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996); *see also Ex parte Young*, 209 U.S. 123 (1908). But here, Plaintiff seeks only money damages, and retrospective declaratory and equitable relief. Compl. § IX. And, Eleventh Amendment immunity shields states from claims for money damages, *Liner v. Hochul*, No. 21 Civ. 11116, 2022 WL 826342, at *1 (S.D.N.Y. Mar. 17, 2022), and "declaratory relief dealing solely with past violations," *Medina*, 2015 WL 13744627, at *7. Although Plaintiff demands "affirmative relief necessary to eradicate the effects of Defendants' unlawful practices," *see* Compl. § IX(B), he does not allege any present violations of his rights, *see id. See Medina*, 2015 WL 13744627, at *7 (noting that "declaratory relief where there is no present violation, is also barred under the Eleventh Amendment"). Accordingly, this exception does not preclude the State's immunity defense in this matter.

Where a defendant is found to have sovereign immunity from suit, the Court is deprived of subject-matter jurisdiction under Rule 12(b)(1). *McGinty v. New York*, 251 F.3d 84, 89, 101 (2d Cir. 2001). Accordingly, because the State is immune from liability on all of Plaintiff's claims under the Eleventh Amendment, its motion to dismiss is GRANTED. And, because amendment would be futile, Plaintiff's claims against the State are DISMISSED with prejudice to renewal. [3]

[3]   Because the Court concludes that it lacks jurisdiction over Plaintiff's claims against the State under Rule 12(b)(1), it need not reach the State's alternative ground for dismissal, that Plaintiff's § 1983 and § 1985 claims must be dismissed because the State is not a suable "person" within the meaning of those statutes. State Mem. at 3–4.

## IV. The DA Defendants' Motion

Plaintiff raises claims against the DA Defendants "in their individual capacities"[4] arising *inter alia* under § 1983, § 1985, and § 1986,[5] based on three main factual assertions. *See generally Compl.* First, Plaintiff alleges that Kalra and Nasar wrongfully chose to prosecute him, despite the lack of physical evidence tying him to the shooting. Compl. ¶ 81. Second, Plaintiff asserts that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of his trial, *see id.* ¶¶ 75–76, 78. Third, Plaintiff alleges that the "[p]rosecuting [a]ttorneys" "coached" Jackson to give false testimony to the grand jury that indicted him. *Id.* ¶¶ 50–51.

---

[4]  Plaintiff makes this clarification for the first time in his opposition papers. ECF No. 28 at 14. The Court notes that because, as discussed, the Eleventh Amendment bars suits against states, *see supra* at 8–10, when a defendant is sued in his official capacity, the court treats the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Serves.*, 436 U.S. 658, 690 n.55 (1978)). And, where a "district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity." *D'Alessandro v. City of N.Y.*, 713 F. App'x 1, 8 (2d Cir. 2017). Accordingly, any claims Plaintiff may raise against the DA Defendants in their "official capacity" would be precluded by immunity under the Eleventh Amendment. *See id.*

[5]  Although Plaintiff asserts that he pleads each of his claims against "all Defendants," even a liberal read of the complaint makes clear that certain of Plaintiff's claims cannot implicate the DA Defendants' conduct, including counts 1 (unreasonable search and seizure); 2 (false arrest/imprisonment); 11 (personal injury); 12 (property damage) and 13 (negligent hiring, training, supervision, and discipline of officers). Compl. ¶¶ 117–27, 168–81. As the Court has already dismissed Counts 7 and 9, *see supra* at 7–8, it only considers Counts 3 (malicious prosecution); 4 (deprivation of fair trial); 5 (conspiracy); 6 (failure to intervene); 8 (abuse of process); 10 (negligent misrepresentation); and 14 (negligent

---

infliction of emotional distress) against the DA Defendants.

### A. Absolute Immunity

**\*6**  The DA Defendants argue that Plaintiff's claims are barred by absolute and qualified prosecutorial immunity. DA Defs. Mem. at 10–12, ECF No. 22-1. To the extent Plaintiff's claims are predicated on his allegations that Kalra and Nasar wrongfully chose to prosecute him and withheld allegedly exculpatory evidence, the Court agrees.

#### 1. Federal Claims

Although § 1983 has no immunities on its face, the Supreme Court has held that, when Congress initially enacted the statute, it did not intend to abrogate existing immunities established at common law. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976). Thus, both absolute and qualified immunity are applicable defenses to § 1983 claims. *See Bernard v. Cty. of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004). Prosecutors are entitled to "absolute immunity" from liability when they function as advocates for the state in circumstances "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. But, prosecutors are entitled only to "qualified immunity" when they perform "investigative functions" normally undertaken by a police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Under the doctrine of qualified immunity, an official is immune from liability "only when in light of clearly established law and the information the official possesses, it was objectively reasonable for him to think that his actions were lawful." *Hill v. City of N.Y.*, 45 F.3d 653, 663 (2d Cir. 1995).

Courts employ a "functional approach" to determine the availability of absolute immunity, looking to "the nature of the function performed, not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations omitted). And, although the party claiming absolute immunity bears the burden of establishing its applicability, *see Doe v. Phillips*, 81 F.3d 1204, 1209 (2d Cir. 1996), if the court finds that that the conduct at issue is covered by absolute immunity, then the actor is shielded from liability for damages no matter "how[ ] erroneous the act ... and how[ ] injurious ... its consequences." *Cleavinger v. Saxner*, 474 U.S. 193, 199–200 (1985) (citation omitted); *see also Anilao v. Spota*, No. 19 Civ. 3949, 2022 WL 697663, at *4 (2d Cir. Mar. 9, 2022).

Plaintiff first alleges that Kalra and Nasar improperly chose to prosecute him, despite a lack of physical evidence tying him to the crime. Compl. ¶ 81. But, prosecutors are immune from suit for decisions regarding "whether and when to prosecute," *Imbler*, 424 U.S. at 430–31 n.32–33, even where they may prosecute an innocent individual, *Schmueli*, 424 F.3d at 237–39. Kalra and Nasar are, therefore, entitled to absolute immunity to the extent Plaintiff's claims are based on their decision to prosecute him.[6]

[6] Because the Court finds that the DA Defendants are entitled to absolute immunity on any claims arising from the withholding of exculpatory evidence, the Court does not reach their alternative argument that Plaintiff fails to state a claim for an alleged *Brady* violation, *see* DA Defs. Mem. at 12–15.

Second, Plaintiff alleges that Kalra and Nasar intentionally withheld exculpatory surveillance videos until the middle of trial, Compl. ¶¶ 75–76, 78. But again, prosecutors are entitled to absolute immunity for all decisions taken "in their prosecutorial capacity, including decisions regarding which evidence should be disclosed to a criminal defendant." *Newson v. City of N.Y.*, No. 16 Civ. 6773, 2019 WL 3997466, at *3 (E.D.N.Y. Aug. 23, 2019). This is true even where information was deliberately withheld, *Ying Li v. City of New York*, 246 F. Supp. 3d 578, 640 (E.D.N.Y. 2017), or where such withholding violated the defendant's constitutional rights, *see Warney v. Monroe Cnty.*, 587 F.3d 113, 125 (2d Cir. 2009). Accordingly, Kalra and Nasar have absolute immunity to the extent any of Plaintiff's claims are predicated on a violation under this factual allegation.

**\*7** Finally, Plaintiff alleges that the "Prosecuting Attorneys" coached Jackson to give false testimony to the grand jury, which then formed the basis for his indictment. Compl. ¶¶ 50–51. Prosecutors generally only have qualified immunity for actions taken before there is probable cause to arrest a defendant, because they are performing an investigative function, rather than acting as advocates. *See Hill*, 45 F.3d at 661; *Buckley*, 509 U.S. at 273. And, although "knowingly presenting evidence" to a grand jury is considered the "core of a prosecutor's role as an advocate," *Bernard*, 356 F.3d at 503, the Second Circuit has distinguished between a prosecutor's knowing presentation of false evidence to the grand jury—which is still entitled to absolute immunity —from a prosecutor's deliberate fabrication of evidence, *Hill*, 45 F.3d at 662–63 (finding that where prosecutor deliberately manufactured evidence to establish probable cause for plaintiff's arrest, his conduct was investigatory, regardless of whether, when the evidence was manufactured, the prosecutor intended to present it to the grand jury). In *Hill*, the Second Circuit also established that "when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of qualified immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss." *Id.* at 663.

As in *Hill*, Plaintiff alleges that the prosecutors deliberately participated in the fabrication of false evidence by coaching a material witness to give perjured testimony to the grand jury, so that the jury would return an indictment. Compl. ¶¶ 50–51. Allegations that the prosecution falsified evidence are distinct from allegations that the prosecution merely presented evidence they knew to be false. *Compare Hill*, 45 F.3d at 662–63, *with Urrego v. United States*, No. 00 Civ. 1203, 2005 WL 1263291, at *2 (E.D.N.Y. May 27, 2005) (prosecutors receive absolute immunity for claims predicated on "false presentation of evidence to a grand jury"). And, considering the Court's obligation to liberally construe Plaintiff's pleadings and afford every reasonable inference in his favor at this stage, the Court concludes the DA Defendants have not established that they were acting as "advocates," rather than "investigators," when they engaged in the challenged conduct. *Hill*, 45 F.3d at 660 (officials asserting absolute immunity bear the burden of establishing it for the action in question). And, accepting the facts in the complaint as true, the DA Defendants would not be entitled to even qualified immunity, because it is objectively unreasonable for them to have knowingly coached a witness to give false testimony before a grand jury. *See Cipolla v. Cty. of Rensselaer*, 129 F. Supp. 2d 436, 456 (N.D.N.Y. 2001) (not "objectively reasonable" to believe presenting or soliciting perjured testimony did not violate plaintiff's clearly established rights). Accordingly, to the extent that Counts 3, 4, 5, 6, and 8 are predicated on the claim that the DA Defendants coached Jackson to give false testimony, they are not entitled to either absolute or qualified immunity.

### 2. State Claims

Plaintiff raises state-law claims against the DA Defendants in Counts 10 and 14 of the complaint. Compl. ¶¶ 164–67, 182–85. As with federal law, under New York law, a district attorney prosecuting crime is performing a quasi-judicial function, and, as such, is entitled to absolute immunity.

*Arteaga v. State*, 72 N.Y.2d 212, 217 n.1 (N.Y. 1988). But, unlike federal law, prosecutors are absolutely immune for official acts in both the prosecution and investigation of criminal charges. *See Moore v. Dormin*, 173 Misc. 2d 836, 843, (N.Y. Sup. Ct. 1997), *aff'd as modified*, 252 A.D.2d 421 (N.Y. App. Div. 1998). A prosecutor does not receive absolute immunity, however, "when knowingly acting in violation of law." *Id.* As with Plaintiff's federal claims, to the extent his state law claims against the DA Defendants are predicated on his allegations that they improperly targeted him for prosecution or deliberately withheld exculpatory evidence, the DA Defendants are entitled to absolute immunity. But, construing Plaintiff's third allegation liberally, he essentially claims that the prosecutors knowingly acted in violation of the law by suborning perjury. The Court cannot conclude, therefore, that the DA Defendants are entitled to absolute immunity as a matter of state law to the extent Counts 10 and 14 rest on this allegation. [7]

[7]    As noted, the parallel state-law constitutional claims in Counts 4, 5, and 6 are dismissed with prejudice. *See supra* at 8.

**B. Time Bar**

**\*8** The DA Defendants argue that Plaintiff's claims are untimely. DA Defs. Mem. at 6–8. With the exception of Counts 3 (§ 1983 malicious prosecution) and 4 (§ 1983 deprivation of a fair trial), the Court agrees.

### 1. Federal Claims

Claims arising under §§ 1983 and 1985, when brought in this district, are governed by New York's three-year statute of limitations for personal injury actions. N.Y. C.P.L.R. § 214; *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d Cir. 2002) (citation omitted); *Hernandez-Avila v. Averill*, 725 F.2d 25, 27 n.3 (2d Cir. 1984). But, claims under § 1986 have a one-year statute of limitations, *see* 42 U.S.C. § 1986. Federal courts are also obligated to apply New York's tolling rules. *Bd. of Regents of Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483 (1980).

On March 20, 2020, then-Governor Andrew Cuomo issued Executive Order 202.8, which tolled the statute of limitations in New York in light of the COVID-19 pandemic. 9 N.Y.C.R.R. § 8.202.8. Subsequent orders extended the tolling period until November 3, 2020. Exec. Order 202.67 (Oct. 4, 2020). Contrary to the DA Defendants' assertion, *see* DA Defs. Mem. at 7–8, other courts in this district have uniformly concluded that Executive Order 202.8 applies to federal cases applying New York's statute of limitations, including for § 1983 claims. *See, e.g.*, *Lewis v. Westchester Cnty.*, No. 20 Civ. 9017, 2021 WL 3932626, at \*2 n.3 (S.D.N.Y. Sept. 2, 2021). [8] The Court concludes, therefore, that Executive Order 202.8 tolls the statute of limitations for Plaintiff's §§ 1983 and 1985 claims, which apply New York's three-year limitations period—but not Plaintiff's § 1986 claims, because the applicable statute of limitations for that claim is found in the federal statute itself.

[8]    The DA Defendants' reliance on *Johnson v. Fargione* is unavailing. In that case, the court found that the plaintiff's claims, which had expired weeks before the issuance of Executive Order 202.8, could not "be said to have been tolled" by that Executive Order, as the time for filing had already passed and the plaintiff had offered no excuse for the delay. 20 Civ. 764, 2021 WL 1406683, at \*3 (N.D.N.Y. Feb. 17, 2021), *report and recommendation adopted* 2021 WL 1404554 (Apr. 14, 2021). Although *Johnson* is instructive with respect to how claims that may have expired *before* the issuance of Executive Order 202.8 (*i.e.*, before March 20, 2020) should be treated, it does not address the applicability of the Executive Order to federal claims that, like Plaintiff's, had not yet expired by that date.

Section 1983 claims based on malicious prosecution or deprivation of a fair trial accrue when the underlying criminal action against the plaintiff is "favorably" terminated, rather than at the time of arrest. *Sharp v. Cnty. of Putnam*, No. 18 Civ. 780, 2019 WL 2250412, at \*4 (S.D.N. Y May 24, 2019); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 394 (S.D.N.Y. 2016). The dismissal of an indictment constitutes the termination of a proceeding. *Sharp*, 2019 WL 2250412, at \*4–5. Applying these principles, Plaintiff's § 1983 claims for malicious prosecution (Count 3) and denial of a fair trial (Count 4) accrued on October 17, 2017, the date the trial court dismissed the indictment against him. Dismissal Tr. at 5. And, although the statute of limitations would have expired on October 17, 2020, New York's COVID-19 tolling rule extended the limitations period until June 2, 2021. [9] Because Plaintiff commenced this suit on March 12, 2021, Counts 3 and 4 are timely.

9

    Executive Order 202.8 tolled applicable limitations periods from March 20, 2020 to November 3, 2020. The order amounted to a "pause" in the limitations period—that is, during the duration of the toll, the clock to file [did] not run," but "[o]nce the toll end[ed,] the clock resume[d] from where it was when the toll began, and the plaintiff ha[d] the rest of his limitations period to file his complaint," *Johnston v. City of Syracuse*, No. 20 Civ. 1497, 2021 WL 3930703, at *6 (N.D.N.Y. Sept. 2, 2021). Because, as of March 20, 2020, when the clock was "paused," Plaintiff had 211 days remaining before the expiration of the limitations period on October 17, 2020, the Court calculates 211 days after November 3, 2020, as the end of the relevant limitations period when tolled—which is June 2, 2021.

**\*9** By contrast, a § 1983 abuse-of-process claim accrues when the criminal process is "set in motion—typically at arrest—against the plaintiff." *Hadid v. City of N.Y.*, No. 15 Civ. 19, 2015 WL 7734098, at *5 (E.D.N.Y. Nov. 30, 2015), *aff'd* 730 F. App'x 68 (2d Cir. 2018). Because Plaintiff was arrested on January 27, 2016, the relevant statute of limitations for Count 8, § 1983 abuse of process, expired on January 27, 2019, and COVID-19 tolling provisions are, therefore, inapplicable. Accordingly, this claim is DISMISSED with prejudice as untimely.

Section 1985(3) conspiracy claims accrue "at the time of the events that caused the injury." *Panetta v. Cassel*, 20 Civ. 2255, 2020 WL 2521533, at *5 (S.D.N.Y. May 18, 2020). The existence of a conspiracy "does not postpone the accrual of causes of action arising out of the conspirators' separate wrongs. It is the wrongful act, not the conspiracy, which is actionable, whether the act is labelled a tort or a violation of [federal civil rights statutes]." *Singleton v. City of N.Y.*, 632 F.2d 185, 192 (2d Cir. 1980) (citation omitted). As discussed, the single allegation that escapes absolute immunity—and therefore is the only remaining basis for Plaintiff's claims against the DA Defendants—is that those defendants suborned perjury in the grand jury proceedings by coaching Jackson to give false testimony, resulting in Plaintiff's indictment and arrest. Plaintiff's § 1985(3) claim—Count 5 of the complaint—accrued no later than January 27, 2016, the date of his arrest—which again, applying a three-year statute of limitations untouched by COVID-19 tolling provisions, renders it untimely. Count 5 is, accordingly, DISMISSED with prejudice.

Similarly, Count 6, Plaintiff's § 1986 conspiracy claim, accrued when Plaintiff knew, or had reason to know of the harm or injury. *Young v. Lord & Taylor, LLC*, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). Plaintiff knew of the injury by his arrest date. Applying § 1986's one-year statute of limitations, any § 1986 claim Plaintiff brought after January 27, 2017, is untimely. [10] Accordingly, Count 6 is DISMISSED with prejudice.

10

    Even assuming, *arguendo*, that Plaintiff would not have had reason to know of the harm or injury that was the basis of his Section 1986 claim until the date the indictment was dismissed (October 17, 2017), the claim would still be time-barred, because this would only extend the limitations period to October 17, 2018—nearly three years before the commencement of this action.

### 2. State Claims

Counts 10 and 14 of the complaint—both state common-law claims—are also time-barred. "Under New York law, a plaintiff asserting tort claims against the City or its employees," as well as against municipal officials like district attorneys, "must file a notice of claim within [90] days after the incident giving rise to the claim and commence the action within a year and [90] days from the date of the incident." *Brown v. City of N.Y.*, No. 18 Civ. 3287, 2020 WL 1819880, at *7 (S.D.N.Y. Apr. 9, 2020) (citing N.Y. Gen. Mun. Law §§ 50-e(1)(a), 50-i(1)); *see also Gonzalez v. City of N.Y.*, No. 94 Civ. 7377, 1996 WL 227824, at *2 (S.D.N.Y. May 3, 1996). Plaintiff asserts that he filed the requisite notice of claim with the City on January 16, 2018—720 days after his arrest, and 91 days after the dismissal of the indictment. Compl. ¶ 16. Plaintiff did not commence this action until March 12, 2021. *See* Compl. Therefore, Plaintiff neither timely filed a notice of claim within 90 days, nor did he commence this lawsuit within a year and 90 days after the date the indictment was dismissed—the last date that could possibly serve as the trigger for the statute of limitations. Failure to comply with the mandatory notice of claim requirements is a basis for dismissal of a plaintiff's claims. *Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003). The Court, accordingly, concludes that Counts 10 and 14 are also time-barred, and therefore, these claims are DISMISSED with prejudice.

### C. Personal Involvement

**\*10**  Liability under § 1983 must be premised on a defendant's direct, personal involvement in the alleged violations. *See Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020). A defendant cannot be held vicariously liable under § 1983 for employing or supervising an employee that violated the plaintiff's rights—rather, a plaintiff must plead "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

As to Vance, Plaintiff only alleges that he served as the DA of New York County. Compl. ¶ 11. Vance may not be held liable for merely employing or supervising Kalra and Nasar. *See Iqbal*, 556 U.S. at 676. And, Plaintiff neither pleads that Vance was personally involved in investigating the shooting or prosecuting him, nor is there any evidence in the record to support such a finding. Accordingly, Plaintiff's claims against Vance are DISMISSED with prejudice, because given the lack of evidence of Vance's personal involvement, the Court finds that granting leave to amend would be futile. *Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011).

Plaintiff similarly fails to specify Kalra and Nasar's personal involvement in his claimed constitutional violations, stating only that the "Prosecuting Attorneys" coached Jackson to provide testimony. Compl. ¶ 50. But, given Plaintiff's position as a *pro se* litigant, the Court recognizes that there may be additional information made available to Plaintiff through discovery that would enable Plaintiff to assert claims directly against Kalra and Nasar, such as if, for example, either of them prepared Jackson to testify. By **April 15, 2022**, accordingly, the DA Defendants shall, through counsel, inform Plaintiff and the Court whether Kalra or Nasar prepared Jackson to testify before the grand jury with respect to any potential criminal charges against Plaintiff, and/or conducted an examination of Jackson before the grand jury. No later than **May 16, 2022**, Plaintiff shall file an amended complaint, alleging with specificity Kalra and Nasar's direct, personal involvement in either "coaching" Jackson to testify falsely before the grand jury, or deliberately eliciting false testimony from Jackson during the grand jury proceedings. In addition, because, as detailed *infra* at 25–26, the Court finds that Plaintiff's malicious prosecution claim is deficient because he failed to allege that the underlying criminal proceedings terminated in his favor, an argument raised by the City Defendants but not the DA Defendants, any amended malicious prosecution claim that Plaintiff wishes to assert against Kalra and Nasar should also address this issue. Failure

to do so shall result in dismissal with prejudice of Plaintiff's remaining claims against Kalra and Nasar.

## V. City's Motion to Dismiss

Plaintiff brings claims against the City Defendants, on the grounds that (1) Miller failed to conduct a thorough and complete investigation of the shooting, by not interviewing several witnesses, including the 911 caller, Compl. ¶¶ 36–37, 39; (2) in his investigation, Miller obtained—but disregarded—surveillance video from both the inside and outside of Highline Ballroom, *id.* ¶¶ 40–43; (3) that Miller "used his own added facts and embellished statements" in his investigative reports to target Plaintiff as the sole suspect in the shooting, *id.* ¶ 44, *see also* ¶ 39; (4) that Corrando, as Miller's supervisor, approved his investigative reports but failed to notice the inconsistencies and contradictions therein, *id.* ¶ 95; and (5) that Passamenti "authorized DNA tests," which revealed that the DNA evidence recovered at the scene "did not match Plaintiff," *id.* ¶ 96. The Court addresses each remaining [11] cause of action.

[11]     As noted, the Court dismissed Count 7 for relying on a statute that does not provide a private right of action, *see supra* at 7; Count 9 for being duplicative of Count 4, *see id.* at 8, and all the state constitutional claims Plaintiff asserts analogously to his federal constitutional claims, *see id.*

### A. Time Bar

#### 1. Section 1983 Claims

**\*11**  Plaintiff brings claims under § 1983 for unlawful search and seizure (Count 1); false arrest (Count 2); malicious prosecution (Count 3); deprivation of a fair trial (Count 4); and abuse of process (Count 8). As noted, § 1983 claims are subject to a three-year statute of limitations in this district. *See supra* at 15. And, for the reasons discussed with respect to the DA Defendants, the Court concludes that Counts 3 and 4 were timely pleaded. *See supra* at 16–17.

A § 1983 unlawful search and seizure claim, however, accrues on the date the allegedly unlawful search occurred. *McClanahan v. Kelly*, No. 12 Civ. 5326, 2014 WL 1317612, at *4 (S.D.N.Y. Mar. 31, 2014). Plaintiff alleges that his property was searched on January 9, February 12, and February 15, 2016. Compl. ¶¶ 46–47. The applicable statute of limitations, therefore, expired no later than February 15, 2019, nearly

two years before Plaintiff brought suit. Plaintiff's claims are, therefore, untimely, and Count 1 is DISMISSED with prejudice as time-barred.

Section 1983 false arrest claims and abuse-of-process claims accrue from the date of Plaintiff's arrest. *See Rivera v. City of N.Y.*, No. 16 Civ. 9709, 2019 WL 252019, at *4 (S.D.N.Y. Jan. 17, 2019) (false arrest); *Anderson v. Cnty. of Putnam*, No. 14 Civ. 7162, 2016 WL 297737, at *3 (S.D.N.Y. Jan. 22, 2016) (abuse-of-process). Plaintiff was arrested on January 27, 2016, and therefore, any such claims should have been brought no later than January 27, 2019. Counts 2 and 8 are, accordingly, DISMISSED with prejudice as untimely.

### 2. Sections 1985(3) and 1986 Claims

Liberally construing the complaint, in Count 5, Plaintiff sets forth a conspiracy cause of action under § 1985(3), alleging that the City Defendants engaged in a conspiracy to have Plaintiff wrongfully convicted, *see* Compl. ¶ 97. This claim appears predicated on the NYPD investigation into the January 6, 2016 shooting, and Miller's alleged embellishment of information, and focus on Plaintiff as the sole suspect. *Id.* ¶¶ 36–37, 39, 46, 90. Plaintiff also raises a failure-to-intervene claim under § 1986 (Count 6), seemingly arising from Corrado's alleged failure to notice the inconsistencies and contradictory statements allegedly included in Miller's police reports. *Id.* ¶ 95.

Section 1985(3) claims accrue "at the time of the events that caused the injury," and are subject to a three-year statute of limitations, *Panetta*, 2020 WL 2521533, at *5. Section 1986 claims based on a failure to intervene accrue when the defendant fails to intervene, *Thomas v. City of Troy*, 293 F. Supp. 3d 282, 303 (N.D.N.Y. 2018), and must be brought within one year, *see* 42 U.S.C. § 1986. Plaintiff's claims each began accruing no later than January 27, 2016, the date of Plaintiff's arrest, because Plaintiff does not suggest that any investigation took place after that date. The applicable limitations period extends no later than January 27, 2019, for Plaintiff's § 1985(3) claim, and January 27, 2017 for Plaintiff's § 1986 claim, two and four years, respectively, before the complaint was filed. Counts 5 and 6 are, therefore, DISMISSED with prejudice as time-barred.

### 3. State Claims

To the extent Plaintiff's state common-law claims, asserting various types of negligence, arise from the NYPD investigation into the shooting on January 6, 2016; the searches of Plaintiff's property on January 9, February 12, and February 15, 2016; and Plaintiff's arrest on January 27, 2016, Plaintiff was required to file a notice of claim within 90 days of those events, *see* N.Y. Gen. Mun. L. § 50-e. As noted, Plaintiff did not file a notice of claim with the City until January 16, 2018—one year and eleven months after the latest of those dates. Compl. ¶ 16. Accordingly, each of Plaintiff's negligence claims (Counts 10–14) are DISMISSED with prejudice. [12]

> [12]   As discussed *supra* at 18–19, even if the Court construes Plaintiff's notice of claim as timely based on the dismissal of Plaintiff's criminal case on October 17, 2017, Plaintiff still failed to commence this action within one year and 90 days, as required by statute. This provides an alternative ground for dismissal.

### B. Claim Against the City [13]

> [13]   Plaintiff also names the NYPD as a defendant. *See* Compl. But, the NYPD is a non-suable agency of the City, and thus, to the extent any of Plaintiff's claims are brought against it, they fail as a matter of law. *See Jenkins v. City of N.Y.*, 478 F.3d 76, 93 n.19 (2d Cir. 2007). Any such claims are, accordingly, DISMISSED with prejudice.

 **\*12**  The Court reads Plaintiff's complaint as claiming, under *Monell v. Department of Social Services*, 436 U.S. 658, that the City is liable for the allegedly unlawful conduct of the named NYPD officers. *See* Compl. ¶ 179. The City Defendants argue that Plaintiff does not include sufficient factual allegations to support a municipal liability claim. City Defs. Mem. at 20–22, ECF No. 34. The Court agrees.

To bring a municipal liability claim under § 1983, the plaintiff must "prove the existence of a municipal policy or custom," then demonstrate a causal connection between the policy and the alleged constitutional deprivation. *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). Plaintiff pleads neither, offering only conclusory allegations that the City Defendants "engaged in a pattern and practice to commit the aforementioned unlawful acts," Compl. ¶ 179, and that a policy is "inferred" because the City Defendants "took no steps to reprimand or discharge the officers involved," ECF No. 39 at 27. These allegations cannot, without more,

2022 WL 992885

state a claim for municipal liability. *E.g.*, *Fleming v. City of New York*, No. 18 Civ. 4866, 2020 WL 5522871, at *6 (S.D.N.Y. July 23, 2020). Because Plaintiff offers no facts which suggest that the deficiencies in his *Monell* claim may be cured by amendment, this claim is DISMISSED with prejudice. *Strong v. City of Syracuse*, No. 16 Civ. 1054, 2020 WL 137250, at *3–4 (N.D.N.Y. Jan. 13, 2020) (dismissing *Monell* claim, with prejudice, given "[p]laintiff's conclusory allegations are insufficient to plausibly infer a custom or policy to support municipal liability").

#### C. Passamenti's Personal Involvement

Plaintiff's remaining claims are Counts 3 (malicious prosecution) and 4 (denial of a fair trial). As to Defendant Passamenti, Plaintiff alleges that Passamenti authorized DNA tests, which revealed that the DNA evidence recovered at the scene "did not match Plaintiff." Compl. ¶ 96. Plaintiff does not allege that Passamenti was involved in falsification of evidence, that he attempted to hide the results of the relevant DNA tests, or that he was otherwise responsible for, or even aware of, the alleged "embellishment" of statements in the NYPD's investigative reports. Plaintiff has not, therefore, sufficiently alleged Passamenti's direct, personal involvement in any constitutional violations under § 1983. *Tangreti*, 983 F.3d at 618. And, because the record does not establish that Plaintiff could cure this pleading defect by amendment, Plaintiff's claims against Passamenti are DISMISSED with prejudice.

#### D. Malicious Prosecution

A claim for malicious prosecution under § 1983—Count 3 of the complaint—requires the plaintiff to show that the criminal proceedings against him were terminated "in his favor," typically by an acquittal or another form of dismissal of the charges on the merits. *Janetka v. Dabe*, 892 F.2d 187, 189–90 (1989). The City Defendants argue that Plaintiff has not made such a showing. City Defs. Mem. at 10, 14–17. The Court agrees. Plaintiff asserts—citing no authority in support —that the dismissal of the indictment was a "termination in his favor" because dismissals that "include constitutional privilege assertions are considered favorable terminations." ECF No. 39 at 7, 10 (quotation marks omitted). It is not clear what Plaintiff means by this. And, from the Court's review of the state court transcript, it appears that, in dismissing the indictment, neither the prosecution, nor the court, made any statements indicating a belief in Plaintiff's innocence. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018) (looking to the "reasons ... stated on the record for dismissing

the charges" in determining whether the termination of the criminal case was in plaintiff's favor). Indeed, Kalra expressly declined to concede that Plaintiff was innocent, instead reaffirming her belief that Plaintiff "was the shooter." Dismissal Tr. at 15. The presiding judge similarly stated on the record that dismissal of the indictment was warranted even though he did not "see any prosecutorial misconduct." *Id.* at 16. The dismissal of the indictment, therefore, left open the question of Plaintiff's guilt or innocence, and Plaintiff cannot, accordingly, assert on that basis alone, that the proceedings were terminated in his favor.

**\*13** The Court notes, however, that because four years have passed since the dismissal of the indictment, Plaintiff may be able to plead additional facts from that time that support this relevant element of his claim. There is no information before the Court as to whether, for example, Plaintiff was ever informed by the prosecutors that he had been cleared of wrongdoing, whether Jackson or anyone else was later prosecuted for the shooting, or whether the state court made any further statements regarding the merits of the charges against Plaintiff. Count 3 is, accordingly, DISMISSED without prejudice, to provide Plaintiff with an opportunity to plead additional facts to support this claim.

#### E. Denial of Fair Trial

To state a claim under § 1983 for denial of a fair trial based on the fabrication of evidence by a police officer—Count 4 of the complaint—a plaintiff must allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016) (citation omitted). The plaintiff need not show a favorable termination indicative of innocence to state such a claim. *Smalls v. Collins*, 10 F. 4th 117, 142–43 (2d Cir. 2021). The City Defendants argue that Plaintiff has failed to show a deprivation of his liberty interests because there was probable cause for his prosecution, in the form of corroborative ballistics evidence. City Defs. Mem. at 16 (citing Dismissal Tr. at 15); City Defs. Reply at 6–7, ECF No. 46.

Probable cause is not a complete defense to a fair trial claim. *Torres v. City of N.Y.*, No. 16 Civ. 6719, 2017 WL 4325822, at *5 (E.D.N.Y. Sept. 27, 2017) (noting that where "independent probable cause exists for the prosecution," a plaintiff must "show that the misconduct caused some deprivation above and beyond the fact of the prosecution itself." (citation

omitted)). Plaintiff plausibly alleges that Miller fabricated and "embellished" Jackson's statements in his investigative report; that Miller provided these reports to prosecutors to secure Plaintiff's indictment and arrest; and that Corrando, as Miller's supervisor, reviewed and approved these reports without identifying any "embellishments" or obvious factual contradictions. *See* Compl. ¶¶ 44–49, 95. On a motion to dismiss, the Court cannot take as true the City Defendants' factual assertion that, regardless of any alleged fabrications in Miller's reports, the prosecution had independent ballistics evidence to satisfy the probable cause standard. *Compare* City Defs. Reply at 6–7, *with* ECF No. 39 at 9–12. It cannot, therefore, find as a matter of law, that the City Defendants had probable cause for Plaintiff's indictment and prosecution. *See Bullard v. City of N.Y.*, 240 F. Supp. 2d 292, 299 (S.D.N.Y. 2003). The Court concludes, therefore, that Plaintiff has sufficiently alleged a § 1983 denial of fair trial claim against Miller and Corrando. The City Defendants' motion to dismiss Count 4 of the complaint is, accordingly, DENIED.

## CONCLUSION

For the reasons stated above, the State's motion to dismiss, ECF No. 20, is GRANTED, and Plaintiff's claims against the State are DISMISSED. The DA Defendants' motion to dismiss, ECF No. 22, is GRANTED—Plaintiff's claims against Vance are DISMISSED; and his claims against Kalra and Nasar are DISMISSED except for Counts 3 and 4, which are DISMISSED without prejudice to renewal in an amended complaint. By **April 15, 2022,** the DA Defendants shall make the disclosures directed in this order. The City Defendants' motion to dismiss is DENIED as to Count 4, and GRANTED in all other respects. Plaintiff's claims against Passamenti, the NYPD, and the City are DISMISSED; and his claims against Miller and Corrando are DISMISSED, except for Count 3, which is DISMISSED without prejudice to renewal in an amended complaint.

**\*14** By **May 16, 2022**, Plaintiff shall file an amended complaint as to Counts 3 and 4, with the additional factual allegations detailed in this order. The Clerk of Court is directed to terminate the motions pending at ECF Nos. 20, 22, and 32, and mail a copy of this order to Plaintiff *pro se*. The Court shall separately provide Plaintiff with a copy of all unpublished cases cited herein.

SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 992885

---

**End of Document**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)

|

Signed 06/14/2021

**Attorneys and Law Firms**

Rondue Gentry, Plaintiff, Pro Se, Lakeview Shock
Incarceration Correctional Facility, P.O. Box T, Brocton, New
York 14716.

### ORDER and REPORT-RECOMMENDATION

Miroslav Lovric, U.S. Magistrate Judge

**I. INTRODUCTION**

 **\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1)
together with an amended application to proceed *in forma
pauperis* (Dkt. No. 5) filed by Rondue Gentry ("Plaintiff") to
the Court for review. For the reasons discussed below, I grant
Plaintiff's amended *in forma pauperis* application (Dkt. No.
5) and recommend that the Complaint be accepted for filing in
part, dismissed in part without leave to amend, and dismissed
in part with leave to amend.

**II. BACKGROUND**

On March 22, 2021, Plaintiff commenced this action by
filing a verified Complaint and a motion to proceed *in
forma pauperis*. (Dkt. Nos. 1, 2.) On March 23, 2021, the
Court denied Plaintiff's *in forma pauperis* application as
incomplete and administratively closed the case. (Dkt. No. 4.)
On April 9, 2021, Plaintiff filed an amended *in forma pauperis*
application. (Dkt. No. 5.) As a result, the case was reopened
and restored to the Court's active docket. (Dkt. No. 6.)

Construed as liberally [1] as possible, the Complaint generally
alleges that Plaintiff's civil rights were violated by the State of
New York, New York State Police Officers Kyle Filli, David
Hurley, and Heath McCrindle, and Assistant District Attorney

Steven Sharp and Albany County District Attorney David
Soares (collectively "Defendants"). (*See generally* Dkt. No.
1.)

[1]   The court must interpret *pro se* complaints to
raise the strongest arguments they suggest. *Soto v.
Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting
*Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.
1994)).

More specifically, Plaintiff alleges that on September 2, 2016,
he was arrested on felony charges but released on bail on
September 9, 2016. (*Id*. at 3.) While out on bail, Plaintiff
alleges that on April 9, 2017, Defendant Filli stopped him
while he was driving near a toll plaza. (*Id*. at 3 & Attach.
2 at 2 [Pl.'s Exs.].) [2] Plaintiff alleges that, during the stop,
"Defendant [ ] Filli [ ] falsely accused Plaintiff of having a
lit marijuana blunt in his ashtray" and that when instructed
to exit his vehicle, Plaintiff put items down the side of his
seat and eventually drove away from the officer. (Dkt. No.
1 at 3.) After he allegedly fled the scene, Plaintiff alleges
that Defendant Filli falsely accused Plaintiff of making four
"u-turns" on the interstate and, at one point, traveling at 127
miles per hour, and made "several [other] vehicle and traffic
law violations." (*Id*.) Defendant Filli eventually lost sight of
Plaintiff's vehicle. (Dkt. No. 1, Attach. 2 at 2.)

[2]   "A copy of a written instrument that is an exhibit
to a pleading is a part of the pleading for all
purposes." Fed. R. Civ. P. 10(c); *Cortec Indus.,
Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.
1991) ("the complaint is deemed to include any
written instrument attached to it as an exhibit or
any statements or documents incorporated in it by
reference.").

On or about April 11, 2017, Plaintiff alleges that he was
contacted by his attorney, [3] who informed Plaintiff that he
had received a call from Defendant Sharp, the Albany County
District Attorney, regarding the incident with Defendant Filli
on April 9, 2017. Plaintiff alleges that his attorney informed
him that if he did not turn himself in, a warrant would be
issued for his arrest. (Dkt. No. 1 at 4.) On the advice of
his attorney, Plaintiff alleges that he appeared at the Albany
City Courthouse on April 18, 2017, "to address the matter
in good faith and resolve any and all confusion[.]" (*Id*.)
Plaintiff alleges that when he arrived at the courthouse with
his attorney, he was arrested by Defendant Hurley for charges

"lo[d]ged against him by Defendant Kyle Filli ... which were all false allegations." (*Id.*)

[3]     Plaintiff's references to "his attorney" in the Complaint appear to relate to his representation in certain criminal matters. Plaintiff has indicated to the Court that he is proceeding *pro se* in this matter. (Dkt. No. 1 at 1.)

**\*2** Plaintiff next alleges that he was then taken to the State Trooper Barracks where Defendant McCrindle "falsified a legal document alleging to have read Plaintiff his Miranda right warnings when this is not true." (*Id.*) The same day he was arrested, on April 18, 2017, Plaintiff alleges that he was transported to Guilderland County Courthouse and arraigned on charges from both the Town of Guilderland and the City of Albany. (*Id.*)

Following his arraignment, Plaintiff alleges that he was transported to the Albany County Courthouse and "arraigned on a bail revocation hearing for a prior case." (*Id.* at 5.) Plaintiff alleges that his bail was then revoked, and he was transported to the Albany County Correctional Facility where he remained confined for eleven months. (*Id.*)

On April 20, 2017, Plaintiff alleges that Defendant Soares "maliciously prosecuted" him under case number 17040697 in the Town of Guilderland and case number 17-244811 in the City of Albany while "knowing the allegations [against Plaintiff] were false." (*Id.*) Plaintiff next alleges that, on March 16, 2018, "approximately eleven (11) months after being arraigned in Guilderland County Court ... Plaintiff received a certificate of disposition dismissing the entire [p]roceeding in favor of the accused." (*Id.*) The Complaint includes a "Certificate of Disposition" from Albany City Court for case number 17-244811, certifying that a "Judgment of Dismissal" was entered as to certain charges against Plaintiff. (Dkt. No. 1, Attach. 2 at 12.) The Complaint also includes a copy of a letter from the Deputy County Clerk for the Town of Guilderland referencing "Case 17040697" and stating that "this case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction over this case." (*Id.* at 14.)

Liberally construed, the Complaint appears to allege the following claims: (1) the State of New York failed to "properly train" its state police officers, leading to his false arrest, malicious prosecution, violation of due process rights, and cruel and unusual punishment; (2) Defendants Filli and Hurley, in their individual and official capacities, fabricated

evidence and falsely arrested Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process; (3) Defendant McCrindle, in his individual and official capacity, fabricated evidence and failed to read Plaintiff his *Miranda* warnings, in violation of Plaintiff's right to due process; (4) Defendant Sharp, in his individual and official capacity, had no "valid or proper warrant" to detain Plaintiff; and that (5) Defendants Sharp and Soares, in their individual and official capacities, "maliciously prosecuted" Plaintiff in violation of the Fourth Amendment and Plaintiff's right to due process. (Dkt. No. 1 at 4-8.)

As relief, Plaintiff seeks money damages from all Defendants, including \$20,000,000 from the State of New York; \$5,000,000 from Defendant Filli; \$5,000,000 from Defendant Hurley; \$1,000,000 from Defendant McCrindle; \$3,000,000 from Defendant Sharp; and \$10,000,000 from Defendant Soares. (*Id.* at 7-8.)

For a more complete statement of Plaintiff's claims, refer to the Complaint. (Dkt. No. 1.)

### III. PLAINTIFF'S AMENDED APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)). [4]

[4]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three

2021 WL 3037709

strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

**\*3** Upon review, the Court finds that Plaintiff has submitted a completed *in forma pauperis* application (Dkt. No. 5) which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed an inmate authorization form. (Dkt. No. 3.) Accordingly, Plaintiff's amended application to proceed with this action *in forma pauperis* is granted.

## IV. LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

Having found that Plaintiff meets the financial criteria for commencing this action *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(a). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[5]

[5]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a government entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against governmental officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of *res judicata* is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## V. ANALYSIS

**\*4** In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed the Complaint with this principle in mind, I recommend that the Complaint be accepted for filing in part and dismissed in part.

### A. *Heck* Delayed Accrual Claims

"A claim for damages [that would necessarily imply the invalidity of a plaintiff's state court] conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In *Covington v. City of New York*, the Second Circuit held that "if success on a § 1983 claim would necessarily impugn the validity of a conviction in a pending criminal prosecution, such a claim *does not accrue* so long as the potential for a judgment in the pending criminal prosecution continues

to exist." *Covington v. City of New York*, 171 F.3d 117, 124 (2d Cir. 1999); *see also McDonough v. Smith*, 139 S. Ct. 2149, 2156-57 (2019) (holding that a plaintiff could not bring a "fabricated-evidence claim under § 1983 prior to favorable termination of his prosecution"); *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) ("[c]laims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."), *report and recommendation adopted by*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.); *McFadden v. Jaeon*, 12-CV-1255, 2012 WL 4107466, at *2 (N.D.N.Y Aug. 23, 2012) (Randolph, M.J.) (barring claims for false arrest and "faulty *Miranda* warnings" pursuant to *Heck*), *report and recommendation adopted by*, 2012 WL 4107465 (N.D.N.Y. Sept. 18, 2012) (Mordue, J.); *Harris v. Buffardi*, 08-CV-1322, 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (Sharpe, J.) (claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy— all of which are patent attacks on the validity of [plaintiff's] conviction—[were] barred.").

Plaintiff specifically alleges that the case against him in the City of Albany, case number 17-244811, was "terminated in his favor" on March 16, 2018 when he received a "Judgement of Dismissal." (Dkt. No. 1 at 5, Attach. 2 at 12.) However, Plaintiff does not similarly allege that the case against him in the Town of Guilderland, case number 17040697, was also dismissed or otherwise terminated in his favor. Instead, Plaintiff vaguely alleges that the "entire proceeding" was dismissed and that the charges against him were "terminated in his favor." (Dkt. No. 1 at 5, 7.) While the Complaint includes a copy of a letter from the Deputy Court Clerk for the Town of Guilderland referencing "Case 17040697" that states that "th[e] case was transferred to Albany City Court as Guilderland Town Court did not have jurisdiction[,]" Plaintiff does not specifically allege how the charges from that case were resolved. (Dkt. No. 1, Attach. 2 at 14.)

Because Plaintiff has failed to allege sufficient facts showing that the case filed against him in the Town of Guilderland terminated in his favor, the Court has a basis to dismiss all of Plaintiff's claims relating to that case as premature pursuant to *Heck*. However, because I also recommend that nearly all of Plaintiff's claims should be dismissed for the additional, independent reasons that follow, I only recommend that the fabrication of evidence claims relating to the charges against Plaintiff in the Town of Guilderland against Defendants Filli,

Hurley, and McCrindle, in their individual capacities, be dismissed as premature pursuant to *Heck*. [6]

[6]     The Complaint does not separate claims against the Defendants based on the two underlying criminal cases against Plaintiff in the City of Albany and Town of Guilderland. However, as discussed in Section V.D.1.iii. of this Report-Recommendation, Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the criminal charges against Plaintiff in the City of Albany, should be accepted for filing.

**B. Claims Against the State of New York**

 **\*5**  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Regardless of the nature of the relief sought, in the absence of the State's consent or waiver of immunity, a suit against the State or one of its agencies or departments is proscribed by the Eleventh Amendment. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "New York State has not consented to suit in federal court." *Abrahams v. Appellate Div. of Supreme Court*, 473 F. Supp. 2d 550, 556 (S.D.N.Y. 2007) (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d. Cir. 1977)). Section 1983 claims do not abrogate the Eleventh Amendment immunity of the states. *See Quern v. Jordan*, 440 U.S. 332, 340-41 (1979). Therefore, I recommend dismissal of all claims brought by Plaintiff against the State of New York pursuant to the Eleventh Amendment. [7]

[7]     Plaintiff also alleges that he "filed a claim in the New York State Court of Claims [against the State of New York] dealing with the same facts involved in this action[,]" but that the case was dismissed on July 25, 2019 "due to failure of establishing proper service." (Dkt. No. 1 at 2.) A court's dismissal for failure to establish proper service is not a final judgment such that *res judicata* would apply. *Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371, 373 n.3 (2d Cir. 1978) ("a dismissal for failure of service of process, of course, has no *res judicata* effect."); *Troeger v. Ellenville Cent. Sch. Dist.*, 15-CV-1294, 2016 WL 5107119, at *7

2021 WL 3037709

(N.D.N.Y. Sept. 20, 2016) (D'Agostino, J.) ("The dismissal based upon failure to join a necessary party and improper service are not final decisions on the merits for *res judicata* purposes."). Based on the Court's review of the New York Court of Claims public docket, Plaintiff's case against the State of New York, Claim No. 132064, was indeed dismissed on June 3, 2019 for failure to properly serve the State of New York in accordance with the service requirements set forth in the New York Court of Claims Act § 11 and 22 N.Y.C.R.R. § 206.5(a). *Gentry v. State of New York*, Claim No. 132064 (N.Y. Ct. Cl. June 3, 2019).

## C. Claims Against Defendants Sharp and Soares

### 1. Individual Capacity

"It is by now well established that a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under § 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (citation and internal quotation marks omitted) (collecting cases). "Because the immunity attaches to the official prosecutorial function ... and because the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions ... the prosecutor has absolute immunity for the initiation and conduct of a prosecution unless he proceeds in the clear absence of all jurisdiction." *Shmueli*, 424 F.3d at 237 (citations and internal quotation marks omitted).

These principles also protect a prosecutor against malicious prosecution claims brought under state law. *Id.* at 238; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 274 n.5 (1993) (indicating that the court's conclusion that absolute immunity protects a prosecutor against § 1983 claims in the nature of malicious prosecution was based in part on the "common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not"); *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976) (same principles require conferral of absolute immunity for damages claims under § 1983 and state law).

**\*6** However, "[a] prosecutor is not absolutely immune solely because she engaged in the conduct in question during her line of work." *D'Alessandro v. City of New York*, 713 F. App'x 1, 5 (2d Cir. 2017) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). A prosecutor is entitled to absolute immunity

"when she acts as an 'advocate.' " *Id.* (citing *Warney v. Monroe Cnty.*, 587 F.3d 113, 121 (2d Cir. 2009)). To be sure, "[a] prosecutor wears many hats" including "administrat[or]," "investigator," and "advocate[ ]." *Id.* (quoting *Hill v. City of New York*, 45 F.3d 653, 656 (2d Cir. 1995)). The "functional" test of whether a prosecutor was acting as an advocate is an objective one, and a court only asks whether "the *conduct* in question could "reasonably" fall under the rubric of the prosecutor's function as an advocate." *Id.* at 5 n.6. (emphasis in original) (citations omitted). "If it does, then absolute immunity attaches even if the prosecutor engaged in those actions with vindictive or malicious intent." *Id.*

"Under our case law, a prosecutor unquestionably acts as an advocate—and therefore receives absolute immunity— when she initiates and pursues a criminal prosecution." *Id.* (citing *Shmueli*, 424 F.3d at 236). Indeed, "a prosecutor still acts within the scope of her duties even if she ... knowingly uses false testimony, ... engages in malicious prosecution, or attempts to intimidate an individual into accepting a guilty plea." *Id.* (citing *Shmueli*, 424 F.3d at 237-38; *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006)); *see also Parker v. Soares*, 19-CV-113, 2019 WL 2232591, at *6 (N.D.N.Y. May 23, 2019) (Hummel, M.J.) (holding that prosecutorial immunity barred certain false arrest claims against Assistant District Attorney David Soares), *report and recommendation adopted by*, 2019 WL 2491918 (N.D.N.Y. June 14, 2019) (Sharpe, J.).

Here, I find that the allegations against Defendants Sharp and Soares arise out of acts intimately associated with the judicial phase of the criminal process, in their role as advocates, including the initiation of criminal proceedings against Plaintiff in the City of Albany and Town of Guilderland. As a result, I recommend that any claims against Defendants Sharp and Soares, in their individual capacity, be dismissed.

### 2. Official Capacity

As previously stated, "[t]he Eleventh Amendment generally bars suits against a state in federal court." *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 600 (2d Cir. 1999) (per curiam) (citation omitted). When a defendant is sued in his official capacity, we treat the suit as one against the "entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165–66, (1985). If a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity. *D'Alessandro*, 713 F. App'x

1, 8 (2d Cir. 2017) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993)).

Here, the claims against Defendants Sharp and Soares, in their official capacities, are effectively claims against the State of New York. For that reason, these claims must be dismissed.

### D. Claims Against Defendants Filli, Hurley, and McCrindle

#### 1. Individual Capacity

Liberally construed, the Complaint alleges claims against Defendants Filli and Hurley for fabrication of evidence and false arrest, in violation of the Fourth Amendment and Plaintiff's right to due process. The Complaint also alleges claims against Defendant McCrindle for fabricating evidence and failing to read Plaintiff his *Miranda* warnings in violation of Plaintiff's right to due process. (*See generally* Dkt. No. 1 at 3-4, 6-8.) [8]

[8]  The Complaint makes other, sporadic legal conclusions. For example, Plaintiff alleges that, "as a result of the actions of all defendants [he has] suffered mental anguish, extreme emotion distress and cruel and unusual punishment." (Dkt. No. 1 at 7.) Plaintiff later clarifies that he seeks to hold the State of New York liable for his "cruel and unusual punishment." (*Id.*) However, as explained in Section V.A. above, the State of New York is immune from suit. To the extent that Plaintiff alleges that Defendants Filli, Hurley, and McCrindle, in their individual capacities, may have caused his "cruel and unusual punishment" or otherwise inflicted emotional distress upon him, his bare legal conclusions are insufficient to withstand the Court's review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A.

**\*7**  For the following reasons, I recommend dismissal of all claims against Defendants Filli, Hurley, and McCrindle in their official capacities. I also recommend dismissal of the false arrest claims against Defendants Filli and Hurley, in their individual capacities, and dismissal of the *Miranda* claim against Defendant McCrindle, in his individual capacity. However, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their

individual capacities, as relates to the case against Plaintiff in the City of Albany, be accepted for filing.

#### i. False Arrest Claims Against Defendants Filli and Hurley

"A § 1983 claim for false arrest, which derives from an individual's right under the Fourth Amendment to be free from unreasonable seizures, including arrest without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is substantially the same as a claim for false arrest under New York law." *Kates v. Greece Police Dep't*, 16-CV-6554, 2017 WL 11548970, at \*3 (W.D.N.Y. Feb. 21, 2017) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). Generally, the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint); *Syfert v. City of Rome*, 17-CV-0578, 2018 WL 3121611, at \*3-5 (N.D.N.Y. Feb. 12, 2018) (Dancks, M.J.) (dismissing all claims as barred by the statute of limitations on initial review pursuant to 28 U.S.C. § 1915(e)(2)(B)).

With regard to Plaintiff's allegations that Defendants Filli and Hurley "falsely arrested" him, the Court must determine when the claims accrued. The Second Circuit in *Singleton* found that a false arrest claim accrued on the date of arrest because that "was the time at which plaintiff knew of his injury arising from the alleged ... false arrest." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980). Applying *Wallace v. Kato*, 549 U.S. 384 (2007), the Second Circuit more recently held that a false arrest claim accrues when the "false imprisonment ends," or more specifically, "when 'the victim becomes held pursuant to legal process,' " *e.g.*, when he is arraigned on charges. *Lynch v. Suffolk Cty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (quoting *Wallace*, 549 U.S. at 388-89); *see also Thomas v. Heid*, 17-CV-1213, 2017 WL 9673716, at \*3 (N.D.N.Y. Dec. 6, 2017) (recognizing that a false arrest claim accrues under § 1983 is when "the alleged false imprisonment ends: when the arrestee is bound over by a magistrate or arraigned on charges.") (Stewart, M.J.), *report and recommendation adopted*, 2018 WL 1773130 (N.D.N.Y.

WESTLAW  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 3037709

Apr. 12, 2018) (D'Agostino, J.). Other cases have simply held that a false arrest claim under § 1983 accrues on the date of arrest itself. *See Kislowski v. Kelley*, 19-CV-218, 2020 WL 495059, at *3 (N.D.N.Y. Jan. 30, 2020) (Stewart, M.J.) ("a false arrest claim accrues at the time of the arrest.").

The distinction between the date of arrest and the date of arraignment here is of no moment because Plaintiff alleges that he was arrested and arraigned on the same day, April 18, 2017. (Dkt. No. 1 at 4.) Even if the charges stemming from the April 9, 2017, incident were ultimately dismissed on March 16, 2018, as Plaintiff alleges, [9] his false arrest claims against Defendants Filli and Hurley first accrued on April 18, 2017, the date when he was both arrested and arraigned on those charges. As a result, the statute of limitations on his false arrest claims under § 1983 expired on or about April 18, 2020. The Complaint was signed on March 6, 2021 and filed with the Court on March 22, 2021, well after the three-year period had expired. [10] I therefore recommend that Plaintiff's Fourth Amendment false arrest claims against Defendants Filli and Hurley be dismissed as untimely.

[9]   Significantly, it is no longer the law of this circuit that a "false arrest" claim under § 1983 accrues only once a plaintiff received a favorable judgment stemming from the allegedly false arrest. *See Jones v. City of New York*, 13-CV-929, 2016 WL 1322443, at *3 (S.D.N.Y. Mar. 31, 2016) (explaining that the prior rule from *Covington v. City of New York*, 171 F.3d 117 (2d Cir. 1999) that a false arrest claim may not accrue until a favorable verdict was reached was overruled by the Supreme Court's *Wallace* decision).

[10]  Under the prison mailbox rule, a prisoner's complaint is deemed filed when it is handed to prison officials—presumptively on the date that the complaint was signed. *Hardy v. Conway*, 162 Fed. App'x 61, 62 (2d Cir. 2006) (collecting cases).

### ii. *Miranda* Claim Against Defendant McCrindle

**\*8** As a general matter, "no cause of action exists under 42 U.S.C. § 1983 for *Miranda* violations." *Hernandez v. Llukaci*, 16-CV-1030, 2019 WL 1427429, at *7 (N.D.N.Y. Mar. 29, 2019) (Hurd, J.) (citing *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)). The failure to inform a plaintiff of his rights under *Miranda*, "does not, without more, result in §

1983 liability." *Deshawn E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998). Instead, the remedy for a violation of the right against self-incrimination is 'the exclusion from evidence of any ensuing self-incriminating statements' and 'not a § 1983 action.' " *Id.* (quoting *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995)). However, "[a] *Miranda* violation that amounts to actual coercion based on outrageous government misconduct is a deprivation of a constitutional right that can be the basis for a § 1983 suit, even when a confession is not used against the declaration in any fashion." *Id.* at 348 (internal citations omitted).

The Complaint does not allege any facts that would plausibly suggest that Defendant McCrindle coerced Plaintiff into giving any inculpatory statements that were later used against him. Additionally, much like Plaintiff's claims alleging false arrest, Plaintiff's *Miranda* claim against Defendant McCrindle is untimely because it was not made within three years from the date that it accrued. *See Rahn v. Erie County Sheriff's Dept.*, 96-CV-0756E, 1999 WL 1067560, at *2 (W.D.N.Y. Nov. 19, 1999) (finding that a *Miranda* claim accrued "about the time of [plaintiff's] arrest" and was subject to the three year statute of limitations bar to § 1983 claims). For these reasons, I recommend Plaintiff's *Miranda* claim against Defendant McCrindle be dismissed.

### iii. Fabrication of Evidence Claims Against Defendants Filli, Hurley, and McCrindle

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused' constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997) (citations omitted). Unlike Plaintiff's claims for false arrest and for a *Miranda* violation, "[t]he statute of limitations for a fabricated-evidence claim ... does not begin to run until the criminal proceedings against the defendant (*i.e.*, the § 1983 plaintiff) have terminated in his favor." *McDonough v. Smith*, 139 S. Ct. 2149, 2154–55 (2019).

Mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed and without expressing an opinion as to whether the Complaint can withstand a properly filed motion to dismiss or for summary judgment, I recommend that a response be required to Plaintiff's fabrication of evidence claims relating to the case

against Plaintiff in the City of Albany, against Defendants Filli, Hurley, and McCrindle, in their individual capacities.

### iv. Due Process Claims Against
### Filli, Hurley, and McCrindle

The Complaint makes several generalized references to being deprived of "due process" and his "life, liberty, and happiness" in connection with the claims against Defendants McCrindle, Filli, and Hurley. (Dkt. No. 1 at 6-7.) But where a plaintiff makes due process and false arrest claims stemming from the same set of facts, the Second Circuit has held that the two claims "merge," such that a plaintiff's due process claim is subsumed by the "false arrest" claim. *Fernandez-Bravo v. Town of* Manchester, 711 F. App'x 5, 8 (2d Cir. 2017); *Maliha v. Faluotico*, 286 F. App'x 742, 744 (2d Cir. 2008); *see also Lozado v. Weilminster*, 92 F. Supp. 3d 76, 102 (E.D.N.Y. 2015) (holding that a plaintiff's procedural due process claim merges with his false arrest claim, the constitutional source of which is the Fourth Amendment); *but see Sepulveda v. City of New York*, 15-CV-5187, 2017 WL 3891808, at *5 (E.D.N.Y. Feb. 14, 2017) (recognizing that a false arrest claim will not merge with a due process claim where the due process claim challenges the conditions of detention, as opposed to the wrongfulness of the detention itself), *report and recommendation adopted*, 15-CV-5187, 2017 WL 3887872 (E.D.N.Y. Sept. 5, 2017).

 **\*9** It is clear from the face of the Complaint that Plaintiff's vague and conclusory references to being denied due process stem directly from the allegations relating to his false arrest. [11] I therefore find that any due process claims Plaintiff alleges against Defendants Filli, Hurley, and McCrindle merge into his false arrest claims, and consistent with my prior analysis of those claims in Section V.D.1.i., I recommend that they are dismissed as untimely.

[11]     Plaintiff also makes the conclusory allegation that he was "deprived of bail." (Dkt. No. 1 at 7.) However, it is clear from the face of the Complaint that Plaintiff was afforded bail, as he alleges that when the April 9, 2017 incident took place, he was out on bail from prior charges. (*Id.* at 3.) Only after he was arrested and arraigned on charges stemming from that April 9, 2017 incident does he allege that his bail on the prior charges was revoked, "after [a] bail revocation hearing." (*Id.* at 5.)

### 2. Official Capacity

" '[C]laims against a government employee in his official capacity are treated as a claim against the municipality,' and, thus, cannot stand under the Eleventh Amendment." *Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at *2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (quoting *Hines v. City of Albany*, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) (McCurn, J.)), *report and recommendation adopted by*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.); *see Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citing *Graham*, 473 U.S. at 166-67) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Here, to the extent that Plaintiff asserts claims against Defendants Filli, Hurley, and McCrindle in their official capacities, I recommend that those claims be dismissed because they are, in reality, claims against the State of New York, which is immune from suit.

### VI. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [12]

[12]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant

leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*10** I recommend that Plaintiff's claims against Defendant State of New York be dismissed with prejudice and without leave to amend. *Sonnick v. Budlong*, 20-CV-0410, 2020 WL 2999109, at \*10 (N.D.N.Y. June 4, 2020) (Lovric, M.J.) (recommending dismissal without leave to amend, claims against New York State Police), *report and recommendation adopted by*, 2020 WL 4345004 (N.D.N.Y. July 29, 2020) (McAvoy, J.). Similarly, I recommend that Plaintiff's claims against Defendants Filli, Hurley, and McCrindle, in their official capacities, be dismissed with prejudice and without leave to amend because they are immune from suit. *See Jackson v. Gunsalus*, 16-CV-0647, 2016 WL 4004612, at \*2 (N.D.N.Y. June 24, 2016) (Dancks, M.J.) (dismissing with prejudice and without leave to amend claims against police officers, in their official capacities, as barred by the Eleventh Amendment), *report and recommendation adopted*, 2016 WL 3983635 (July 25, 2016) (Sharpe, J.). I also recommend that Plaintiff's claims against Defendants Soares and Sharp, in their official and individual capacities, be dismissed with prejudice and without leave to amend because they are also immune from suit. *See Lawrence v. Sherman*, 20-CV-0694, 2020 WL 5904789, at \*3 (N.D.N.Y. Oct. 6, 2020) (D'Agostino, J.) (dismissing with prejudice claims against a defendant prosecutor based on the doctrine of prosecutorial immunity).

I also recommend dismissal with leave to amend the fabrication of evidence claims, that relate to the case against Plaintiff in the Town of Guilderland, against Defendants Filli, Hurley, and McCrindle, in their individual capacities. [13] *Perry v. City of Albany*, 20-CV-165, 2020 WL 3405636, at \*4 (N.D.N.Y. May 6, 2020) (Stewart, M.J.) (recommending dismissal with leave to amend claims that appeared to be barred based on *Heck*), *report and recommendation adopted*, 20-CV-0165, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) (Suddaby, C.J.).

[13]    As discussed in Section V.D.1.iii. above, I recommend that the fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, that relate to the case

against Plaintiff in the City of Albany be accepted for filing because Plaintiff specifically alleged that the City of Albany case was terminated in Plaintiff's favor. (Dkt. No. 1 at 5.)

As to Plaintiff's claims for false arrest against Defendants Filli and Hurley, in their individual capacities, and for a *Miranda* violation against Defendant McCrindle, in his individual capacity, although I have found that these claims are barred by the applicable statute of limitations for the reasons stated in Sections V.D.1.i. and V.D.1.ii., a district court typically should not dismiss claims as time-barred without providing a *pro se* plaintiff with "notice and an opportunity to be heard" as to whether there might be a meritorious tolling argument or other reason why the complaint might be considered. *Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007). For that reason, I recommend that Plaintiff's false arrest and *Miranda* claims be dismissed with leave to amend, even though it appears very unlikely to the undersigned that Plaintiff can state plausible claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at \*7 (N.D.N.Y. May 23, 1995) (Pooler, J.). In any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. The revised pleading must also allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*11  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's amended *in forma pauperis* application (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's Office; and it is further respectfully

**RECOMMENDED** that the Court **ACCEPT FOR FILING** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the City of Albany; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** Plaintiff's fabrication of evidence claims against Defendants Filli, Hurley, and McCrindle, in their individual capacities, as those claims relate to the case against Plaintiff in the Town of Guilderland, as premature pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH PREJUDICE AND WITHOUT LEAVE TO REPLEAD** Plaintiff's claims against the State of New York, Defendants Filli, Hurley, and McCrindle, in their official capacities, and Defendants Sharp and Soares, in their official and individual capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**

Plaintiff's false arrest claims against Defendants Filli and Hurley, in their individual capacities, and Plaintiff's claim for *a Miranda* violation against Defendant McCrindle, in his individual capacity; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [14] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[14] If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2021 WL 3037709

---

2021 WL 3032691
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Rondue GENTRY, Plaintiff,

v.

State of NEW YORK; Kyle Filli; David Hurley; Heath
McCrindle; Steven Sharp; and David Soares, Defendants.

1:21-CV-0319 (GTS/ML)
|
Signed 07/19/2021

**Attorneys and Law Firms**

RONDUE GENTRY, 18-A-1238, Plaintiff, Pro Se, Lakeview
Shock Incarceration Correctional Facility, P.O. Box T,
Brocton, New York 14716.

### DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil
rights action filed by Rondue Gentry ("Plaintiff") against
the State of New York, New York State Police Officers
Kyle Filli, David Hurley and Heath McCrindle, Assistant
District Attorney Steven Sharp, and Albany County District
Attorney David Soares ("Defendants"), is United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice (and without prior leave to amend), certain of
those claims be dismissed without prejudice (and with limited
leave to amend in this action), and the remainder of those
claims survive the Court's *sua sponte* review of his Complaint.
(Dkt. No. 7.) Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so has
expired. (*See generally* Docket Sheet.)

After carefully reviewing the relevant papers herein,
including Magistrate Judge Lovric's thorough Report-
Recommendation, the Court can find no clear error in
the Report-Recommendation.[1] Magistrate Judge Lovric
employed the proper standards, accurately recited the facts,
and reasonably applied the law to those facts. As a result,
the Report-Recommendation is accepted and adopted in its
entirety for the reasons set forth therein.

[1] When no objection is made to a report-
recommendation, the Court subjects that report-
recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-
Recommendation (Dkt. No.7) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims are **DISMISSED
with prejudice** and **without prior leave to amend**: (1)
Plaintiff's claims against the State of New York; (2) Plaintiff's
claims against Defendants Filli, Hurley, and McCrindle in
their official capacities; and (3) Plaintiff's claims against
Defendants Sharp and Soares in their official and individual
capacities; and it is further

**ORDERED** that the following claims are **DISMISSED
without prejudice** to repleading during the pendency of
this action and **with leave to amend** within **THIRTY
(30) DAYS** of the date of this Decision and Order: (1)
Plaintiff's fabrication-of-evidence claims against Defendants
Filli, Hurley and McCrindle in their individual capacities
to the extent that those claims relate to the case against
Plaintiff in the Town of Guilderland; (2) Plaintiff's false arrest
claims against Defendants Filli and Hurley in their individual
capacities; (3) Plaintiff's claim for a *Miranda* violation against
Defendant McCrindle in his individual capacity; and it is
further

**\*2** **ORDERED** that **SURVIVING** this Decision and
Order are Plaintiff's fabrication-of-evidence claims against
Defendants Filli, Hurley and McCrindle in their individual
capacities to the extent that those claims relate to the case
against Plaintiff in the City of Albany; and it is further

**ORDERED** that the Clerk of Court is directed to issue
Summonses and forward, along with copies of the Complaint,

2021 WL 3032691

to the U.S. Marshal for service upon Defendants Filli, Hurley and McCrindle, and those Defendants are directed to respond in accordance with the Federal Rules of Civil Procedure.

**All Citations**

Slip Copy, 2021 WL 3032691

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 5232749
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,

v.

Jeffrey M. GUZY, Defendant.

No. 8:20-CV-721 (GTS/CFH)
|
Signed 11/10/2021

**Attorneys and Law Firms**

Stephen Kelly, 18-A-3202, Gouverneur Correctional Facility, P.O. Box 480, Gouverneur, New York 13642, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

**I. Background**

 *1  Plaintiff pro se Stephen Kelly commenced this action on June 29, 2020, with the filing of a complaint and application to proceed in forma pauperis. See Dkt. Nos. 1, 2. In a Report-Recommendation & Order dated September 21, 2020, the undersigned: (1) granted plaintiff's in forma pauperis application, (2) recommended that the Town of Colonie Police Department be dismissed as a defendant with prejudice, and (3) recommended that the complaint otherwise be dismissed without prejudice and with leave to amend. See Dkt. No. 5. On October 15, 2020, plaintiff filed an amended complaint. On November 3, 2020, Chief Judge Suddaby adopted the Report-Recommendation & Order in its entirety. See Dkt. No. 7. Presently before the Court is review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915.

**II. Initial Review of Amended Complaint**

**A. Legal Standard**

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a

claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted). However, this does not mean the Court is required to accept unsupported allegations that are devoid of sufficient facts or claims. Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Ultimately, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

 *2  (1) a short and plain statement of the grounds for the court's jurisdiction ...

(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted).

### B. Amended Complaint

Plaintiff's amended complaint is essentially identical to his original complaint, the only cognizable difference is that in place of the Town of Colonie Police Department, plaintiff inserts defendant Guzy. See generally Dkt. No. 6. In summary, plaintiff contends that on September 6, 2017, defendant Guzy accused plaintiff of knowingly possessing stolen property. See id. at 3. Plaintiff contends that when he purchased the allegedly stolen bicycle, "there was no indication that it may have been stolen" and he had no reason to believe as such. Id. at 3. Plaintiff further contends that Guzy accused him of knowingly possessing a stolen laptop "which was never reported stolen." Id. Plaintiff contends that the lack of "factual allegations that established that I was aware of the property as having ben [stolen], or as to how, where, and when a theft occurred, [ ] suggests a coerced affidavit." Id.

**\*3** Plaintiff further contends that, as "[t]he charges were in the process of being dismissed in Colonie Court before being transferred to Albany County Court" when "Judge Carter neglected to address their factual sufficiency." Dkt. No. 6 at 3. At some unspecified point thereafter, the charges were suppressed, and then dismissed on December 11, 2018. Id. Plaintiff alleges "false arrest for the first charge" and "false arrest for the second charge." Id. Plaintiff seeks "$250,000 for both claims." Id.

### 1. Judicial Immunity

First, insofar as plaintiff may be seeking to bring a claim against Judge Carter, who plaintiff does not name as a defendant in the caption nor explicitly set forth any claims against, it is recommended that any such claim be dismissed with prejudice as barred by the doctrine of judicial immunity. It is well-settled that judges enjoy absolute immunity from suits for acts performed pursuant to their judicial duties. See Cruz v. New York, No. 5:17-CV-00510 (BKS/TWD), 2017 WL 6021838, at *18 (N.D.N.Y. Oct. 27, 2017)[1] (citation omitted). "Immunity from suit is overcome in only two narrow circumstances[:] [ (1)] a judge is not immune from liability for non-judicial actions, i.e., actions not taken in a judge's judicial capacity[;(2)] a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. The Supreme Court of the United States has " 'generally concluded that acts arising out of, or related to, individual cases before the judge are judicial in nature.' " Id. (quoting Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)).

[1]   Copies of unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff pro se.

Plaintiff's statement about Judge Carter is sparse, amounting to one line in the amended complaint. See Dkt. No. 6 at 3. Even if plaintiff is attempting to say that Judge Carter's actions somehow deprived him of a constitutional right – such as due process – by declining to address the factual sufficiency of charges against plaintiff, such an act clearly arises out of, or relates to, a case before the judge. See id.; see also Green v. Maraio, 722 F.2d 1013, 1016 (2d Cir. 1983) (holding that "a judge defending against a section 1983 action is entitled to absolute judicial immunity from damages liability for acts performed in his judicial capacity") (citing Dennis v. Sparks, 499 U.S. 24, 27 (1980); Supreme Court of Virginia v. Consumers Union of the U.S., Inc., 446 U.S. 719, 734-35 (1980); Stump v. Sparkman, 435 U.S. 349, 360 (1978)); see also Anonymous v. Kaye, 987 F. Supp. 131, 135 (N.D.N.Y. 1997). Accordingly, as any claim plaintiff may be seeking to raise against Judge Carter relating to his apparent failure to address the "factual sufficiency" of charges against plaintiff – even if repleaded to provide additional clarification and factual support – would necessarily fail due to judicial immunity, it is recommended this apparent claim be dismissed with prejudice.

## 2. False Arrest

Liberally construed, plaintiff's amended complaint appears to seek to bring a claim against defendant Guzy for false arrest in violation of the Fourth Amendment, pursuant to 42 U.S.C. § 1983. See Dkt. No. 6; Bryant v. City of New York, 404 F.3d 128, 135-36 (2d Cir. 2005) (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994) (plurality opinion)).[2] As this Court's prior Report-Recommendation & Order noted, it is possible plaintiff also seeks to proceed on a claim of false arrest under New York State law.[3]

[2]   Plaintiff's Amended Complaint is submitted on a form pro se complaint, where he indicates, by checking a box, that he seeks to bring his claim pursuant to 42 U.S.C. § 1983. See Dkt. No. 6 at 1.

[3]   Plaintiff's amended complaint does not explicitly indicate that he seeks to bring a claim for false arrest under New York State law. However, interpreting the complaint liberally to raise the

strongest arguments it suggests, as this Court must in light of the special solicitude due to plaintiff, the undersigned finds this a liberal interpretation of the amended complaint warranted.

*4   "The elements of a claim for false arrest under § 1983 are substantially derived from New York law." Hawthorne v. City of Albany, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 3822112, at *6 (N.D.N.Y. July 25, 2017), report and recommendation adopted sub nom. Hawthorne v. Ruecker, No. 1:17-CV-0716 (GTS/TWD), 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017). "A plaintiff claiming false arrest must establish that: (1) the defendant intended to confine him; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." Id. The United States Supreme Court has made clear that a false arrest claim "consists of detention without legal process...." Wallace v. Kato, 549 U.S. 384, 389 (2007). "Probable cause is a complete defense to a false arrest claim." Hawthorne, 2017 WL 3822112, at *6 (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); see Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). Probable cause exists where the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). "The court looks only to the information the arresting officer had at the time of the arrest." Peterson v. County of Nassau, 995 F. Supp. 305, 313 (E.D.N.Y. 1998). "Once an officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997).

Here, plaintiff alleges that defendant Guzy had no information suggesting that the items were stolen or that there existed anything to support a determination that plaintiff knew or should have known that they were stolen. Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, if it is the case at the time of the arrest that the arresting officer had no knowledge or any reason to believe that the items were stolen, it is possible that there as no probable cause. Thus, based on the – albeit sparse – facts plaintiff has provided, it is not clear that probable cause existed.

As for the confinement prong, it is not entirely clear whether plaintiff was arrested or taken into physical custody absent

his consent or justification. See Lacey v. Yates County, 30 F. Supp. 3d 213, 226 (W.D.N.Y. 2014) ("The heart of a false arrest claim is a being taken into physical custody."). However, given that plaintiff contends that he was charged with possession of stolen property, and that these charges were reviewed by a judge, the undersigned finds it appropriate – in light of special solicitude – to assume at this early juncture [4] that plaintiff was in "custody" within the meaning of the Fourth Amendment. See, e.g., Delaney v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2019 WL 125769, at *2 (N.D.N.Y. Jan. 7, 2019). Accordingly, plaintiff has pleaded enough for this claim to proceed beyond the initial review stage.

[4]     The undersigned declines to reach whether plaintiff's pleadings would survive a properly-filed dispositive motion on this ground.

### 3. Malicious Prosecution

"To prevail on a Section 1983 claim for malicious prosecution, 'a plaintiff must show a violation of his rights under the Fourth Amendment ... and must establish the elements of a malicious prosecution claim under state law.' " Butler v. Hesch, 286 F. Supp. 3d 337, 355 (N.D.N.Y. Feb. 15, 2018) (quoting Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citations omitted)). "The elements of a malicious prosecution claim under § 1983 are substantially the same as the elements under New York law." Hawthorne, 2017 WL 3822112, at *6.

To state a malicious prosecution claim under New York law, the plaintiff must allege facts plausibly showing: (1) the initiation of a criminal proceeding; (2) its termination favorably to plaintiff; (3) lack of probable cause; and (4) malice. Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010). In addition, the Second Circuit requires that a plaintiff demonstrate that there was a "post arraignment seizure," since a § 1983 malicious prosecution claim is "grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013).

*5 Id.

Blacks's Law Dictionary defines "criminal proceeding" as "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides the offender's punishment; at a criminal hearing or trial." Black's Law Dictionary (10th ed. 2014). Courts have recognized that entrance of a guilty plea is part of a criminal proceeding. See Florida v. Nixon, 543 U.S. 175, 187 (2004) ("A guilty plea ... is an event of signal significance in a criminal proceeding.") (citations omitted); Davila v. United States, 07-CV-1320, 2008 WL 906691, at *12 (E.D.N.Y. Mar. 31, 2008) (noting that the competency requirement "applies throughout all stages of the criminal proceedings, including the guilty plea").

Cantey v. Martinez, No. 1:1-6CV-0014 (GTS/CFH), 2018 WL 2772868, at *6 (N.D.N.Y. June 6, 2018).

The Second Circuit has held that although "police officers do not generally "commence or continue" criminal proceedings against defendants, a claim for malicious prosecution can still be maintained against a police officer if the officer is found to 'play[ ] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act.' " Bermudez v. City of New York, 790 F.3d 368, 377 (2d Cir. 2015) (quotations omitted). "This element might be satisfied by, for example, showing that an officer generated witness statements or was regularly in touch with the prosecutor regarding the case." Id. (citation omitted).

Butler v. Hesch, 286 F. Supp. 3d 337, 356 (N.D.N.Y. 2018).

Here, plaintiff pleads no facts to suggest that defendant Guzy "commenced or continue[d]" criminal proceedings against him. Entirely lacking from the amended complaint are any allegations that Guzy played an "active role" in the prosecution – as opposed to the initiation -- of criminal charges against plaintiff. Butler, 286 F. Supp. 3d at 256. Further unclear is whether plaintiff experienced a "post-arraignment seizure." Hawthorne, 2017 WL 3822112, at *6.

As plaintiff has set forth no factual allegations relating to his malicious prosecution claim, and it is not clear whether plaintiff even intends to proceed with such a claim, it is recommended that, insofar as plaintiff's amended complaint may be liberally interpreted as seeking to bring a claim for malicious prosecution against defendant Guzy under the Fourth Amendment and/or New York State law, such claims be dismissed without prejudice. [5]

[5]     Should the District Judge adopt this Report-Recommendation & Order, permitting plaintiff file

a second amended complaint, plaintiff is advised that any second amended complaint will supersede and replace the amended complaint in its entirety. Plaintiff is not permitted to incorporate any portion of earlier complaints by reference and may not attempt to replead claims already dismissed by this Court with prejudice. Failure to include any facts, claims, or defendants in any second amended complaint will be deemed abandonment of such facts, claims, or defendants.

### III. Conclusion

**\*6** Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's false arrest claims **proceed,** and it is

**RECOMMENDED**, that plaintiff's apparent malicious prosecution claims be **DISMISSED WITHOUT PREJUDICE**; and it is further

**RECOMMENDED**, that, insofar as plaintiff's amended complaint may be read as seeking to raise a claim against Judge Carter, such claim be **DISMISSED with prejudice** as barred by the doctrine of judicial immunity; and it is

**ORDERED**, that, following the District Judge's ruling on this Report-Recommendation & Order, the Clerk of the Court return the case to the magistrate judge to address whether service is appropriate at that time; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [6]

[6]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Slip Copy, 2021 WL 5232749

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 160305
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Stephen KELLY, Plaintiff,

v.

Jeffrey M. GUZY, Defendant.

8:20-CV-0721 (GTS/CFH)
|
Signed 01/18/2022

**Attorneys and Law Firms**

STEPHEN KELLY, 18-A-3202, Plaintiff, Pro Se, Gouverneur
Correctional Facility, P.O. Box 480, Gouverneur, New York
13642.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Stephen Kelly ("Plaintiff") against Jeffrey
M. Guzy ("Defendant"), is United States Magistrate Judge
Christian F. Hummel's Report-Recommendation reviewing
the pleading sufficiency of Plaintiff's Amended Complaint
(Dkt. No. 6), and recommending that any claims asserted
therein against Judge Carter be dismissed with prejudice as
barred by the doctrine of judicial immunity, that Plaintiff's
Section 1983 malicious prosecution claim be dismissed
without prejudice, and that his Fourth Amendment false arrest
claim survive the Court's sua sponte review. (Dkt. No. 8.)

Plaintiff has not filed an Objection to the Report-
Recommendation, and the deadline by which to do so
has expired. (*See generally* Docket Sheet.) After carefully
reviewing the relevant papers herein, the Court can find no
clear error in Magistrate Judge Hummel's thorough Report-
Recommendation:[1] Magistrate Judge Hummel employed the
proper standards, accurately recited the facts, and reasonably
applied the law to those facts. As a result, the Report-
Recommendation is accepted and adopted in its entirety for
the reasons set forth therein.

[1]     When no objection is made to a report-
recommendation, the Court subjects that report-

recommendation to only a clear-error review. Fed.
R. Civ. P. 72(b), Advisory Committee Notes: 1983
Addition. When performing such a clear-error
review, "the court need only satisfy itself that there
is no clear error on the face of the record in order to
accept the recommendation." *Id.*; *see also Batista
v. Walker*, 94-CV-2826, 1995 WL 453299, at \*1
(S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am
permitted to adopt those sections of [a magistrate
judge's] report to which no specific objection is
made, so long as those sections are not facially
erroneous.") (internal quotation marks omitted).

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Hummel's Report-
Recommendation (Dkt. No. 8) is **ACCEPTED** and
**ADOPTED** in its entirety; and it is further

**ORDERED** that, to the extent that Plaintiff's Amended
Complaint (Dkt. No. 6) attempts to assert any claims against
Judge Carter, those claims are *sua sponte* **DISMISSED** with
**prejudice** for failure to state a claim as barred by the doctrine
of judicial immunity;[2] and it is further

[2]     The Court notes that, at least in the Second
Circuit, a dismissal based on the doctrine of judicial
immunity arises under Fed. R. Civ. P. 12(b)(6)
(which permits the dismissal to be with prejudice)
and not Fed. R. Civ. P. 12(b)(1) (which permits
the dismissal to be merely without prejudice). *See
Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020)
("Because Butcher's claims against Justice Farneti
are barred by absolute judicial immunity, they were
correctly dismissed under Rule 12(b)(6).").

**ORDERED** that Plaintiff's Section 1983 malicious
prosecution claim in his Amended Complaint is **DISMISSED**
**without prejudice** to refiling during the pendency of this
action upon a successful motion to amend pursuant to Fed. R.
Civ. P. 15 and Local Rule 15.1; and it is further

**\*2** **ORDERED** that Plaintiff's Fourth Amendment false
arrest claim **SURVIVES** the Court's *sua sponte* review of his
Amended Complaint; and it is further

**ORDERED** that the case is returned to Magistrate Judge
Hummel to address whether service of process is appropriate
at this time.

2022 WL 160305

**All Citations**

Slip Copy, 2022 WL 160305

---

**End of Document**                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 357358

2005 WL 357358
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Francisco PERALTA, 96-A-6821, Plaintiff,

v.

JOHN DOE, Medical Physician at Wende
Correctional Facility, RMU Unit, Defendant.

No. 04-CV-6559P.
|
Jan. 24, 2005.

**Attorneys and Law Firms**

Francisco Peralta, Staten Island, NY, pro se.

DECISION and ORDER

INTRODUCTION

SKRETNY, J.

**\*1** Plaintiff Francisco Peralta, an inmate of the Arthurkill
Correctional Facility, has filed this *pro se* action seeking
relief under 42 U.S.C. § 1983 (Docket No. 1) and has
both requested permission to proceed *in forma pauperis*
and filed a signed Authorization (Docket No. 2). Plaintiff
claims that the "John Doe" defendant, the Wende Correctional
Facility Medical Physician in the RMU Unit, violated his
constitutional rights by improperly administering a dangerous
drug without properly monitoring plaintiff's response. For the
reasons discussed below, plaintiff's request to proceed as a
poor person is granted, but unless plaintiff files an amended
complaint as directed below, the complaint will be dismissed
pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

PLAINTIFF'S ALLEGATIONS

Plaintiff alleges that while he was held at Wende Correctional
Facility, the John Doe medical physician deliberately denied
him adequate medical care in violation of the Eighth
Amendment. Plaintiff states that he is a dialysis patient.
The Wende physician allegedly administered Kayexalate
without properly monitoring plaintiff's response. Plaintiff

subsequently suffered myalgia so severe that he was unable
to lift his legs. Plaintiff notified the Wende physician that
something was wrong, but he was not examined. A few days
later, Plaintiff was transported to a hospital for treatment. He
claims that he suffered injuries to his right hand, feet and heart
as a result of the John Doe physician's failures to monitor
plaintiff's response to medication and to respond promptly to
his complaints.

DISCUSSION

Because plaintiff has met the statutory requirements of 28
U.S.C. § 1915(a) and filed an Authorization with respect
to this action, plaintiff is granted permission to proceed *in
forma pauperis.* Sections 1915(e)(2)(B) and 1915A(a) of 28
U.S.C. require the Court to conduct an initial screening of this
complaint. In evaluating the complaint, the Court must accept
as true all factual allegations and must draw all inferences
in plaintiff's favor. *See King v. Simpson,* 189 F.3d 284, 287
(2d Cir.1999). Dismissal is not appropriate "unless it appears
beyond doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief." *Conley
v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80
(1957); *and see Chance v. Armstrong,* 143 F.3d 698, 701 (2d
Cir.1998).

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. "To
state a valid claim under 42 U.S.C. § 1983, the plaintiff must
allege that the challenged conduct (1) was attributable to a
person acting under color of state law, and (2) deprived the
plaintiff of a right, privilege, or immunity secured by the
Constitution or laws of the United States." *Whalen v. County
of Fulton,* 126 F.3d 400, 405 (2d. Cir.1997) (citing *Eagleston
v. Guido,* 41 F.3d 865, 875-76 (2d Cir.1994)). Based on its
evaluation of the complaint, the Court finds that plaintiff's
claims must be dismissed pursuant to 28 U.S.C. §§ 1915(e)
(2)(B)(ii) and 1915A(b) unless plaintiff files an amended
complaint as directed below.

**\*2** Because plaintiff has not identified a defendant for
service of the complaint, the complaint is subject to dismissal.
Ordinarily, where *pro se* litigants have John Doe or unknown
defendants, together with named defendants, the complaints
are served on those named defendants and the plaintiff
pursues discover / regarding the John Doe defendants.
"Plaintiffs, especially *pro se* incarcerated plaintiffs should
be given an opportunity to identify ... unknown defendants
through discovery.' *Brown v. Doe,* 1999 WL 893070, *2*

(S.D.N.Y. October 18, 1999) (deferring defendants' motions to dismiss until they have provided the requisite discovery information and materials to the *pro se* prisoner litigant) (citing *Valentin v. Dinkins,* 121 F.3d 72, 76 (2d Cir.1997) (district courts must assist *pro se* incarcerated litigants with their inquiry into the identities of unknown defendants) and *Billman v. Indiana Department of Corrections,* 56 F.3d 785, 789 (7th Cir.1995) (where circumstances "make it infeasible for the prisoner to identify someone before filing his complaint, his suit should not be dismissed as frivolous")). Here, however, plaintiff has not identified any named defendant who can be served or through whom discovery can be pursued. Therefore, the complaint cannot go forward as drafted.

The Court will permit plaintiff to amend his complaint to name a defendant for service and discovery. *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). The Court notes that plaintiff pursued a grievance through the Central Office Review Committee regarding his medical treatment at Wende (Docket No. 1, Ex. A) and may have the identity of the John Doe defendant available to him. However, in light of plaintiff's current incarceration in another facility and the attendant difficulty that may pose to obtaining the name on his own, the Court will permit plaintiff to add the Superintendent of Wende Correctional Facility as a named defendant in order to have issue joined and make possible discovery of the John Doe defendant's identity. *Valentin,* 121 F.3d at 76 (district court "may pursue any course that it deems appropriate to a further inquiry into the identity" of the unknown defendant); *and see Munz v. Parr,* 758 F.2d 1254, 1257 (8th Cir.1985) ("Rather than dismissing the claim, the court should have ordered disclosure of Officer Doe's identity by other defendants named and served or permitted the plaintiff to identify the officer through discovery."); *Gillespie v. Civiletti,* 629 F.3d 637, 642 (9th Cir.1980) ("the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identifies, or that the complaint would be dismissed on other grounds").

Further, because the Court finds that the defendant is likely to be represented by the New York State Attorney General, the Court will direct the Clerk of the Court to send a copy of the complaint and this order to the Attorney General's Office to facilitate the identification of the John Doe medical physician at Wende Correctional Facility, RMU Unit.

CONCLUSION

**\*3** Because plaintiff has met the statutory requirements of 28 U.S.C. § 1915(a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, plaintiff's complaint must be dismissed unless he files an amended complaint by February 25, 2005 in which he includes the necessary allegations regarding his claims as directed above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure.

Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco,* 556 F.2d 665, 668 (2d Cir.1977); *see also Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action which the defendants must answer.

ORDER

IT HEREBY IS ORDERED, that plaintiff's motion to proceed *in forma pauperis* is granted;

FURTHER, that plaintiff is granted leave to file an amended complaint as directed above by February 25, 2005;

FURTHER, that the Clerk of the Court is directed to send to plaintiff with this order a copy of the original complaint, a blank § 1983 complaint form, and the instructions for preparing an amended complaint;

FURTHER, that the Clerk of the Court is directed to send a copy of the complaint and this order to the Assistant Attorney General in Charge, 144 Exchange Street, Rochester, New York 14614;

FURTHER, that in the event plaintiff fails to file an amended complaint as directed above by February 25, 2005, the complaint shall be dismissed without further order of the Court;

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by

2005 WL 357358

February 25, 2005, the Clerk of the Court shall close this case as dismissed without further order; and

FURTHER, that in the event the complaint is dismissed because plaintiff has failed to file an amended complaint by February 25, 2005, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 357358

---

**End of Document** © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4057958
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

Earl WRIGHT, Plaintiff,

v.

NEW YORK CITY, New York City Police
Department, Police Officer David H. Miller, John
Doe # 2, Police Officer N.Y.C. P.D., Defendants.

No. 09–cv–2452 (CBA)(LB).
|
Sept. 14, 2012.

**Attorneys and Law Firms**

Earl Wright, Stormville, NY, pro se.

Andrew Thomas Myerberg, New York City Law Department,
New York, NY, for Defendants.

## MEMORANDUM & ORDER

AMON, Chief Judge.

## INTRODUCTION

 *1  On September 30, 2011, the Court adopted the Report
and Recommendation of Magistrate Judge Lois Bloom in
the above-captioned case, granting in part defendants' motion
for summary judgment. Specifically, the Court granted
summary judgment as to *pro se* plaintiff Earl Wright's
Fourth Amendment claims, and dismissed on its own motion
all claims against the New York City Police Department
and all claims under the Ninth and Tenth Amendments.
The Court further ordered the parties to submit additional
briefing with respect to Wright's claims under the Fifth,
Eighth, and Fourteenth Amendments, which defendant had
not addressed. Now before the Court is defendants' fully-
briefed supplemental motion for summary judgment. For the
reasons stated below, the motion is granted.

## BACKGROUND

Wright claims that in 2007 defendants violated his
constitutional rights by taking a sample of his DNA with a
buccal swab. The sample was taken pursuant to N.Y. Exec.
Law § 995, *et seq,* which mandates the collection of samples
from offenders who have been convicted of certain crimes. It
appears from the evidence produced during discovery that the
officers who took the sample relied on Wright's rap sheet in
concluding that Wright had been convicted of second-degree
robbery, a qualifying offense under the statute. As it turned
out, the rap sheet failed to reflect a reduction of Wright's
second-degree robbery conviction to third-degree robbery,
which was not a qualifying offense. These basic facts form the
basis for Wright's suit. A more-detailed explanation of these
facts, familiarity with which is assumed, is set forth in the
Magistrate Judge's Report and Recommendation of July 25,
2011.

## DISCUSSION

*I. Standard of Review*

Summary judgment is appropriate if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
*accord Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Belfi v. Prender-gast,* 191
F.3d 129, 135 (2d Cir.1999). The court's function is not to
resolve disputed issues of fact, but only to determine whether
there is a genuine issue to be tried. *See Anderson v. Liberty
Lobby, Inc., All* U.S. 242, 249 (1986).

The court is required to view the evidence in the light most
favorable to the nonmoving party. *See Adickes v. S.H. Kress
& Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142
(1970). Nevertheless, the non-moving party cannot rest on
mere allegations or denials but must instead set forth specific
facts showing there is a genuine issue for trial. Fed.R.Civ.P.
56(e); *Nat 'l Westminster Bank USA v. Ross,* 676 F.Supp. 48,
51 (S.D.N.Y.1987) ( "[S]peculation, conclusory allegations,
and mere denials are not enough to raise genuine issues
of fact."). No genuine issue exists unless there is sufficient
evidence favoring the nonmoving party for a jury to return
a verdict for that party. If the evidence is merely colorable,
or is not significantly probative, summary judgment may be
granted. *Anderson, All* U.S. at 249–50 (citations omitted).

2012 WL 4057958

*II Motion for Summary Judgment*

**\*2** Construing Wright's *pro se* complaint liberally, as it must, the Court identifies his remaining claims as alleging (1) violation of his Fifth and Fourteenth Amendment rights to procedural and substantive due process, (2) his Eighth Amendment right against cruel and unusual punishment and his Fourteenth Amendment right against excessive force; and (3) his Fourteenth Amendment right to equal protection of the laws. Defendants move for summary judgment on the grounds that Wright has failed to establish a constitutional violation.

*A. Due Process Claims*

*i. Procedural Due Process*

Wright does not appear to challenge the enactment of N.Y. Exec. Law § 995 as a violation of due process. If he did, such a claim would fail because "[w]hen the legislature passes a law which affects a general class of persons, those persons have all received procedural due process—the legislative process." *Yusov v. Martinez,* No. 00–cv–5577, 2000 WL 1593387, *4 (S.D.N.Y. Oct.24, 2000)* (internal citation omitted). Other courts in this Circuit have rejected challenges to § 995 on this basis. *See id.; Abascal v. Bellamy,* No. 10–cv–1406, 2011 WL 2436931, *3 (S.D.N.Y. Jun.8, 2011).* Accordingly, the Court construes Wright's procedural due process claim as a challenge to what he alleges was the erroneous application of § 995 to him.

Wright's claim is, in essence, a challenge to a "random, unauthorized act [ ] by state employ-ees." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,* 101 F.3d 877, 880 (2d Cir.1996). In such cases, "the Due Process Clause of the Fourteenth Amendment is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful postdeprivation remedy." *Id.* (citing *Hudson v. Palmer,* 468 U.S. 517, 531, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). As defendants point out, N.Y. Exec. Law § 995–c(9) provides a mechanism through which a DNA record can be expunged. In addition, an Article 78 proceeding—which the Second Circuit has "held on numerous occasions [to be] a perfectly adequate postdeprivation remedy," *Hellenic Am.,* 101 F.3d at 881—represents another means by which a claimant may challenge the operation of § 995 or seek expungement of data from state records. *See, e.g. Abascal,* 2011 WL 2436931 at *4 (holding an Article 78 proceeding directing defendants to ex-punge DNA records a meaningful post-deprivation remedy); *Gallo v. Pataki,* 15 Misc.3d 824, 831 N.Y.S.2d 896 (Sup .Ct.Kings.Cty.2007) (Article 78 proceeding addressing challenge to the operation of § 995). Wright has not argued to the contrary. Because Wright was provided adequate postdeprivation remedies, his procedural due process claim fails.

*ii. Substantive Due Process*

Any attempt to advance a substantive due process claim also fails. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised." *Lawrence v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (internal citations and quotation marks omitted). As other courts have noted, the Supreme Court in *Schmerber v. California,* 384 U.S. 757, 759–60, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held that "[t]he extraction of blood from an individual in a simple, medically acceptable manner does not implicate rights secured by the Due Process Clause." *Abascal,* 2011 WL 2436931 at *4. The less invasive act of obtaining a DNA sample with a buccal swab therefore also does not implicate those rights. *See id.; Yusov,* 2000 WL 1593387 at *5.

**\*3** Because Wright's claims for violation of his procedural and substantive due process rights are both without merit, summary judgment is granted as to those claims.

*B. Excessive Force/Cruel and Unusual Punishment Claim*

Wright challenges the act of taking his DNA sample with a buccal swab under the Eighth Amendment. As defendants point out, the Eighth Amendment does not apply "until after conviction and sentence." *United States v. Walsh,* 194 F.3d 37, 47 (2d Cir.1999) (internal quotation marks omitted). And because Wright's sample was taken when he was a pretrial detainee for his August 2007 arrest, they argue, the Eighth Amendment does not apply. On the other hand, it is clear that the reason Wright was subjected to the DNA sampling was not the 2007 arrest for which he had not yet been tried, but his prior conviction for burglary. In any event, whether the Eighth Amendment applies is academic: "the right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment," and the standard applied to such claims is identical to that applied to an Eighth Amendment claim. *Id.* at 47–48. The Court therefore applies this common standard.

2012 WL 4057958

To establish a claim in this context, a plaintiff must establish both an objective and a subjective element. *Id.* at 49–50. The objective element requires a showing that the force alleged was 'sufficiently serious or harmful enough" to be actionable. *Id.* at 50. This standard "excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian,* 503 U.S. 1, 9–10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (internal quotation marks omitted). The subjective element "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Sims v. Artuz,* 230 F.3d 14, 21 (2d Cir.2000) (internal quotation marks omitted).

Wright cannot satisfy either element. Use of a buccal swab to obtain a DNA sample is clearly *de minimis,* and it is in no way "repugnant to the conscience of mankind." *See Yusov,* 2000 WL 1593387, at *5. Nor is there any suggestion in the record that officers subjected Wright to the DNA sample in bad faith. Indeed, they did so pursuant to what they reasonably believed was explicit legal authorization. Wright has not argued to the contrary. Summary judgment is therefore granted with respect to his claims based on defendants' use of physical force against him, whether they are construed as arising under the Eighth or Fourteenth Amendment, or both.

*C. Equal Protection Claim*

Finally, to the extent Wright advances a claim based upon the Equal Protection Clause of the Fourteenth Amendment, this claim is without merit. To establish such a claim, a plaintiff must show that "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Giordano v. City of N.Y.,* 274 F.3d 740, 750–51 (2d Cir.2001). Wright has made no allegation, nor has he adduced any evidence, suggesting that he was treated differently than similarly-situated individuals. Accordingly, summary judgment is granted with respect to his equal protection claim.

*III. Wright's Motion to Reconsider*

**\*4** Wright's opposition to defendants' supplemental motion for summary judgment appears to request that the Court alter or amend its September 30, 2011 adoption of the Magistrate Judge's Report and Recommendation. To the extent Wright does seek such relief, his motion is denied. "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir .1995). Wright has pointed to nothing satisfying the above criteria.

**CONCLUSION**

For the reasons stated above, defendants' supplemental motion for summary judgment is GRANTED with respect to all remaining claims and defendants. The Clerk of Court is directed to enter judgment accordingly and to dismiss this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 4057958

**End of Document**                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.